PHILIP MANSON, Plaintiff, *v.* NEW YORK LIFE INSURANCE COMPANY, Defendant.

First Department, June 23, 1930.

*Daniel Mungall*, for the plaintiff.

*Ferdinand H. Pease* of counsel [*Louis H. Cooke*, attorney], for the defendant.

MERRELL, J. Plaintiff, a person of full age, on May 14, 1904, made written application to the defendant, an insurance corporation organized and existing under and by virtue of the laws of the State of New York, having its principal office and place of business in the city, county and State of New York, and duly authorized to conduct the business of life insurance therein, for insurance on his life, and on the same day the defendant issued five identical policies, known as insurance and investment policies, to plaintiff. It appears from the agreed statement of facts that plaintiff accepted said policies and duly paid premiums thereon in reliance upon a letter dated June 9, 1904, and a letter dated June 27, 1904, the first of which was signed by an agency director of the defendant and addressed to its soliciting agent at New York city. The second letter was written by said soliciting agent and was addressed to plaintiff at Rochester, N. Y. It is stipulated and agreed, however, between the parties, that the words " in reliance on," upon which the policies in question were accepted and the premiums paid thereon, are understood and intended to be a statement of fact and not a conclusion of law, and that defendant does not concede the relevancy of this fact and that the parties

present this question of relevancy in the light of the terms of the contract for decision by this court. Plaintiff paid to defendant in cash as premiums on said five policies of insurance a total sum of $5,162.50. The policies in question were what was known as substandard policies. The twenty-year accumulation period on said policies was completed on May 14, 1924, when the policies by their terms matured. Prior to the maturing of the policies plaintiff had obtained from defendant cash loans in the sum of $2,000 on each of said policies, which loans were outstanding on said maturity date and were duly deducted in the settlement of the policies and equaled the face amount thereof, exclusive of dividends. It is further stipulated that prior to the end of the accumulation period the defendant sent plaintiff and plaintiff received five identical written statements setting forth the results under the accumulation benefit of each of said respective policies and notified plaintiff that the cash value of each policy at maturity would be $2,522.82, and that any outstanding loan would be due and payable on completion of the accumulation period and that in calculating dividends the company had taken into account the mortality among the persons insured in the class of adjustable accumulation policies. A copy of said notice is annexed to the agreed statement of facts as Exhibit E. On May 14, 1924, plaintiff received, indorsed and used five checks of the defendant, each for the sum of $522.82, on each of which appeared the words, " In full settlement of all claims under policy No. ——," each check bearing the number of one of said policies. It is stipulated that plaintiff accepted said checks and the proceeds thereof upon the belief that said sums had been correctly computed by defendant to be the sums actually due on the basis of " standard " policies, but it is stipulated and agreed that the words " upon the belief " are understood and intended to be a statement of fact and not a conclusion of law and that defendant does not concede the relevancy of this fact, and that the parties present this question of relevancy in the light of the terms of the contract for decision by this court. It is further stipulated by and between the parties that had said policies been " standard " and the same as other " standard " policies, plaintiff would have received the sum of $678.52 as accumulated dividends on each policy instead of the sum of $522.82 at the maturity date of the policies, thus making a difference of $155.70 on each policy, or a total of $778.50 on the five policies.

Plaintiff claims to be entitled to judgment for $778.50, plus interest of $280.26 from May 14, 1924, to date, a total of $1,058.76. It is further stipulated that if the court finds upon the foregoing facts that the plaintiff is not entitled to recover said sum of $1,058.76,

but is entitled to a rescission of the contracts, then the parties hereto present the question whether defendant is entitled to a credit for having carried the risk, as before stated, and the parties stipulated that if defendant is entitled to such credit and the plaintiff's only recovery is limited to rescission, then defendant shall have judgment, but that if the court shall find that plaintiff's only relief is rescission and that defendant is not entitled to a credit for carrying the risk, then the plaintiff's recovery shall be $470.13, which is stipulated to be the difference between the other credits due the company and the credits due the insured. Defendant claims that it is entitled to judgment.

From the agreed statement of facts it very clearly appears that the defendant insurance company on May 14, 1904, issued five twenty-year endowment policies to become effective on that day and that all of said policies matured twenty years later, on May 14, 1924. We think there can be no question but what the policies were substandard policies. That such is the fact clearly appears from two special provisions of the policies. The first of these provided that although the policy was upon its face issued for $2,000, the defendant agreed to pay only $1,200 to the executors, administrators or assigns of the assured or to the beneficiary designated upon receipt and approval of proofs of death of the assured, and in addition thereto a sum equal to the annual premium on the policy multiplied by the number of years that the policy had been in force, including the year in which death occurred, providing such death should occur before May 14, 1911, and that if such death should occur on or after said date and before the end of the endowment period of the policy, the entire sum payable should be $2,000. This provision is spoken of as a 4/10 lien. There was also contained the following provision in each policy:

" This Policy is in the Adjustable Accumulation Class, and the mortality experience of the Company among persons insured in that class will be used in determining its share of the profits."

The policies in question were issued upon the written application of the insured in which the insured agreed on behalf of himself and of any person who should have or claim any interest in any policy issued under such application: " That no statements, promises or information made or given by, or to, the person soliciting or taking this application for a policy, or by or to any other person, shall be binding on the Company or in any manner affect its rights, unless such statements, promises or information be reduced to writing, and presented to the officers of the Company, at the Home Office, in this application."

Under the title of "General Provisions" each of the policies in suit contained the following provision: "Only the President, a Vice-President, a Secretary, or the Treasurer has power on behalf of the Company to make or modify this or any contract of Insurance or to extend the time for paying any premium, and the Company shall not be bound by any promise or representation heretofore or hereafter made, unless made in writing by one of said officers."

It is the contention of plaintiff that by the letter written by the defendant's agency director to its soliciting agent of June 9, 1904, after the issuance of said policies, and by the letter of June 27, 1904, from the defendant's said soliciting agent to plaintiff, the precise terms of the policies were altered and the plaintiff alleges that he accepted the policies in reliance upon said letters. In our opinion the letters aforesaid in the light of the provisions of each policy above quoted, if we give to them the interpretation that the plaintiff claims, are entirely irrelevant. We are of the opinion that the letter of the agency director addressed to the soliciting agent upon which plaintiff claims to have relied in accepting the policies and paying the premiums thereon, is not susceptible of an interpretation that the insured would receive an accumulated dividend based on a standard rate. The agency director, in his letter, discusses the 4/10 lien reducing the face of the policy from $2,000 to $1,200, plus the amount of premiums paid up to and including the time when the policy should be payable at its full face value. Each of the policies expressly provided that the 4/10 lien would apply during the first seven years of the policy, to wit, if death of the assured occurred before May 14, 1911. It, therefore, seems to us that when the agency director in his letter to the soliciting agent stated, "After this time this policy is the same as any other," meant that after May 14, 1911, the 4/10 lien would not be operative. In thus writing, the agency director was merely quoting from the exact provisions of the policies. The letter does not refer to any dividends, nor to the plain provision of the policy that it is in the adjustable accumulation class, the word "accumulation" meaning "dividends." As we read the letter in question it furnishes no basis for plaintiff's claim for an additional dividend. We do not think the letter from the agency director referred to the survival by plaintiff of the twenty-year endowment period, but rather that the period to which the agency director referred was the seven-year period under which there would be a reduction of the policy in case of death.

Moreover, the plain provision in each of the policies that, "As provided by the terms of the policy, the company in calculating dividends to be apportioned to this policy, has taken into account

the mortality among the persons insured in the class of Adjustable Accumulations Policies," clearly negatives the contention of the plaintiff that he understood said letter from the agency director represented that the accumulated dividend would be based on a standard policy. The aforesaid provision was quoted in each of the five notices sent to the assured on May 14, 1924, when the check of the defendant insurance company for $522.82, the amount of the dividend on each policy, was forwarded to and accepted by plaintiff.

Even though the letter of the agency director to the soliciting agent be interpreted as claimed by plaintiff, the said letter does not purport to waive any condition precedent in either of the policies referred to. Give to the letter the interpretation for which the plaintiff contends, the letter would effect a complete change in the terms of the contracts of insurance. The plaintiff's contention is that although the policy clearly states the basis for computing dividends upon the policies, the letter from the agency director to the soliciting agent provides that the dividends should be computed on a different basis. These contracts of insurance are no different from any other contracts, and they are to be governed by the same rules of interpretation as any other contract. We think, under the terms of the policies, the agency director was without authority to modify the terms of the contract of insurance. Each policy contained a provision that only the president, a vice-president, a secretary or the treasurer of the company " has power on behalf of the company to make or modify this or any contract of insurance or to extend the time for paying any premium," and that " the company shall not be bound by any promise or representation heretofore or hereafter made, unless made in writing by one of said officers." Under such plain provision contained in each policy we are unable to give to the letter in question any force or effect altering the contract or binding the defendant. Upon its face the contract of insurance was full and complete and was intended by the parties to be the sole evidence of the contract entered into. In *Eighmie* v. *Taylor* (98 N. Y. 288) the Court of Appeals said (at p. 294): " If upon inspection and study of the writing, read, it may be, in the light of surrounding circumstances in order to its proper understanding and interpretation, it appears to contain the engagements of the parties, and to define the object and measure the extent of such engagement, it constitutes the contract between them, and is presumed to contain the whole of that contract."

Upon the claim of plaintiff that at least the contracts of insurance should be rescinded on the ground that he did not understand their terms, and that he relied upon the letters aforesaid, his ignor-

ance of the contents of the policies for twenty years while they were outstanding will not, we think, relieve him from the plain provisions of the policies. He is conclusively presumed to know the contents of the policies and to have assented thereto. In *Metzger* v. *Ætna Ins. Co.* (227 N. Y. 411) the Court of Appeals said (at p. 415): " To hold that a contracting party, who, through no deceit or overbearing inducement of the other party, fails to read the contract, may establish and enforce the contract supposed by him, would introduce into the law a dangerous doctrine. Of course, the doctrine does not exist. * * * He who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them and there can be no evidence for the jury as to his understanding of its terms."

The decisions of our Court of Appeals above referred to are no more than expressions of well-known principles governing contracts. The plaintiff received these policies complete in form and executed by the executive officers of the defendant insurance company, and in the absence of some proof that the defendant held out the agency director as clothed with power to modify the terms of the contract, the letter written by the agency director was entirely irrelevant. (*Quinlan* v. *Providence Washington Ins. Co.*, 133 N. Y. 356.) In the case last cited the Court of Appeals said (at p. 363): " The powers possessed by agents of insurance companies, like those of agents of any other corporations, or of an individual principal, are to be interpreted in accordance with the general law of agency. * * * The limitations upon the authority of Kelsey were written on the face of the policy. It declared that ' no officer, agent or representative of the company should have power to waive any provision or condition ' embraced in the printed and authorized policy, but power is given to agents to waive added provisions or conditions, provided such waiver is written upon or attached to the policy. Where a policy permits an agent to exercise a specified authority, but prescribes that the company shall not be bound unless the execution of the power shall be evidenced by a written indorsement on the policy, the condition is of the essence of the authority, and the consent or act of the agent not so indorsed is void. [*Walsh* v. *Hartford Fire Ins. Co.*, 73 N. Y. 5; *Marvin* v. *Universal Life Ins. Co.*, 85 N. Y. 278.]"

There can be no question that the parties to these contracts of insurance understood that the policies themselves contained all the provisions of the contract between them. As to the entire absence of any authority on the part of any agent of the defendant to alter the terms of the contract, it is specifically stated in the

plaintiff's application for the policies in suit, that "no statements, promises or information made or given by, or to, the person soliciting or taking this application for a policy, *or by or to any other person,* shall be binding on the company or in any manner affect its rights, unless such statements, promises or information be reduced to writing, and presented to the officers of the company at the home office." Such specific provision is contained in and is made a part of the application for the insurance. The plaintiff made the application in writing and the defendant accepted the same. The contention of the plaintiff that the aforesaid limitation applied only to the soliciting agent and not to the agency director is without force in view of the fact that the statements referred to apply to *any person.* It is true that our courts have held that an insurance company may not clothe an agent with power to deliver a policy of insurance and at the same time limit his authority to waive conditions precedent, making the delivery ineffective, but such decisions apply only where such limitation of authority would for the first time be brought to the assured's attention in the policy itself, and that in order to be effective such limitation must be contained in the original application executed by the insured. (*Drilling* v. *New York Life Ins. Co.,* 234 N. Y. 234.) We do not think that such rule applies to the facts before us. Even though our courts have established such rule, they have not extended the same so as to include authority in an agent to modify or rewrite a policy of insurance. (*Nicoud* v. *New York Life Ins. Co.,* 149 App. Div. 784.) Among the general provisions contained in the policy there was the following: "In any apportionment or distribution of profits, the principles and methods which may be adopted by the Company for such apportionment or distribution and its determination of the amount equitably belonging to this Policy shall be conclusive upon the Insured and upon all parties having or claiming any interest under this Policy." It would, therefore, seem that even if the agent had represented that the standard dividends would be paid, and even though the company was bound by such representation, the plaintiff expressly agreed that the determination of the company as to the amount of the dividends should be conclusive upon him.

We are, furthermore, of the opinion that upon the acceptance of the checks given in settlement and accompanied by the notices sent to the assured on May 14, 1924, the plaintiff clearly waived any claim of misrepresentation, and that the acceptance of said checks constituted an accord and satisfaction. At the time these checks were sent, plaintiff was notified that the dividend to be paid him was in the adjustable accumulation class. With such

knowledge plaintiff accepted the checks tendered to him as dividends his due under each policy and in full settlement thereof, each of the checks stating that it was given " n full settlement of all claims under policy No. ——," each check bearing the number of one of said policies. Each of the checks aforesaid constituted final payment under the policy to which it referred, plaintiff having previously borrowed the full value of the policies, and the only amount due him on the maturity date was the amount of the dividends. When the checks were delivered the assured was told, not that he would receive an accumulated dividend on a standard basis, but that he was entitled to and would receive the dividend in the " Adjustable Accumulation Class." With such notice delivered to him the plaintiff accepted and used the checks tendered him. Plaintiff contends that his understanding was that the dividends his due were upon a standard basis. The company notified him that the dividends paid were on a different basis. The plaintiff accepted the checks for the dividend computed on the basis claimed by defendant. The law is well settled in this State that if a debt or claim is not admitted or is unadmitted or contingent, the payment of a part thereof in full settlement constitutes a valid accord and satisfaction. (*Nassoiy* v. *Tomlinson,* 148 N. Y. 326.) In *Simons* v. *American Legion of Honor* (178 N. Y. 263) the Court of Appeals stated the rule (at p. 265) as follows: " Now it is the settled law of this State that if a debt or claim be disputed or contingent at the time of payment, the payment, when accepted, of a part of the whole debt is a good satisfaction and it matters not that there was no solid foundation for the dispute." (See, also, *Hettrick Mfg. Co.* v. *Barish,* 120 Misc. 673; affd., 209 App. Div. 807; *Woodbery* v. *New York Life Ins. Co.,* 223 id. 272.)

We, therefore, conclude that the plaintiff is not entitled to recover any additional sum by way of dividends than that already received by him, and that plaintiff is not entitled to a rescission of the contracts of insurance in suit.

Judgment should, therefore, be directed in favor of defendant, with costs.

FINCH, McAVOY, MARTIN and SHERMAN, JJ., concur.

Judgment directed in favor of defendant, with costs. Settle order on notice.