FLORENCE DRENNAN, an Infant over Fourteen Years of Age, by Her Guardian ad Litem, MARGARET DRENNAN, Respondent, *v.* SUN INDEMNITY COMPANY OF NEW YORK, Appellant.

First Department, May 31, 1935.

*Joseph F. Hanley* of counsel· [*Louis A. Garbarini* with him on the brief; *Joseph F. Hanley*, attorney],·for the appellant.

*M. Elliot Gordon*, for the respondent.

MERRELL, J.   This action was brought, pursuant to the provisions of section 109 of the Insurance Law, upon an automobile liability policy issued by the defendant to Zion Funeral Parlors, Inc.   The policy was dated February 10, 1930, and thereby the defendant purported to insure Zion Funeral Parlors, Inc., for a period of three months, beginning at noon on February 10, 1930, and ending at noon on May 10, 1930.   The plaintiff, an infant, by her guardian *ad litem*, brought an action against Zion Funeral Parlors, Inc., to recover damages for personal injuries alleged to have been sustained by her on or about July 7, 1930, through the negligence of the defendant Zion Funeral Parlors, Inc., as owner of the motor vehicle involved in the alleged accident.   One Samuel Schriebman, the driver of the said motor vehicle, an employee of Zion Funeral Parlors, Inc., was joined as a party defendant.   The summons and complaint in the negligence action was served on Zion Funeral Parlors, Inc., and was forwarded by its attorneys to the defendant, appellant, herein, which returned the same to Zion Funeral Parlors, Inc., with a disclaimer of liability upon the ground that there was no coverage accruing to Zion Funeral Parlors, Inc., at the time of the accident, the policy formerly issued having expired by its terms on May 10, 1930, without having been extended.   The attorneys for Zion Funeral Parlors, Inc., later notified the defendant, appellant, herein that the assured would hold the insurance company responsible for any damages sustained as the result of its disclaimer of liability and failure to defend.   The attorneys for the funeral parlors made an investigation of the case, appeared in the action, and interposed an answer on behalf of the defendants Zion Funeral Parlors, Inc., and Samuel Schriebman, the driver of the automobile.   In this answer the allegations of negligence in

the complaint were denied. However, there was no appearance when the case was reached for trial by or on behalf of the assured, and the plaintiff took an inquest on default on June 26, 1933, when a verdict was rendered in favor of the infant plaintiff and against Zion Funeral Parlors, Inc., for $7,500. Neither of the defendants in the action opposed either the motion for the inquest, nor did they take any part therein. The defendants failed to satisfy the judgment against them, and the execution was returned unsatisfied. Thereupon the plaintiff brought the present action, pursuant to the provisions of section 109 of the Insurance Law.

It is alleged in the complaint that the Sun Indemnity Company, on February 10, 1930, by Louis C. Kuhn, its duly authorized general agent in New York city, issued to Zion Funeral Parlors, Inc., through its insurance broker, one Abraham Berg, an automobile liability policy; that in consideration of the payment of $168 premium paid to the defendant it insured Zion Funeral Parlors, Inc., for a period of three months from noon of February 10, 1930, to noon on May 10, 1930; that the policy could be renewed from term to term and the period of said policy extended upon certain terms. It is alleged that the assured duly performed all the terms and conditions of the policy, and that prior to July 7, 1930, when the accident occurred, the policy had been extended, continued in force, and was in full force and effect on the day of the accident. It is alleged that the defendant and its agent had and maintained a regular course of business dealings with the assured or Berg, its insurance broker, whereby the defendant and its agent duly extended credit to the assured or Abraham Berg in the payment of premiums and the various installments of premiums, and that the defendant and its agent had waived and did waive the payment of premiums in advance under the policy, and that the assured or Berg, its broker, relied upon said extension of credit, and that, therefore, the defendant is estopped from denying coverage as of July 7, 1930. It is further alleged that the second installment of premium, in the amount of $126, was duly tendered by the assured and its agent to the defendant and its agent in accordance with the established course of dealings between the parties as to the extension of credit, and that the defendant refused to accept said tender. The answer of the defendant denies the material allegations of the complaint, and relies upon the terms of the policy as a complete defense to any recovery herein on the part of the plaintiff.

Testimony on the part of the plaintiff was to the effect that the general manager of Zion Funeral Parlors, Inc., ordered the policy of insurance in suit through the broker Berg, and that the policy

was delivered about February 20, 1930. Zion Funeral Parlors, Inc., paid the first premium by check early in April, 1930. The testimony was to the effect that Zion Funeral Parlors, Inc., never had any dealings directly with the agent of the defendant company. The general manager of Zion Funeral Parlors, Inc., testified that when the policy was received by the assured he read it and went through it, and knew at the time he received the policy that the term of the policy was from February 10, 1930, to May 10, 1930. At no time was there any extension in writing received from the Sun Indemnity Company extending the policy from May tenth to August tenth. It was, however, the claim of the respondent that there was an oral extension from Berg, the broker. It was conceded at the trial by the defendant that Kuhn was an agent of the company until May 9, 1930. At that time his agency was terminated through a notice duly sent by the Sun Indemnity Company to the State Insurance Department. According to the testimony of Berg he did no business with Kuhn as agent for the Sun Indemnity Company after July, 1930. He also testified that the arrangement made between him and Kuhn as to the remittance of premium was that a credit was extended to him of from fifty to one hundred and ten days. When the policy was first issued the premium had to be turned over to the agent on the twentieth day of the second succeeding month. It appeared that all dealings were had with the office of Louis C. Kuhn which Berg recognized as the general agent of the Sun Indemnity Company and from which office he was billed. Berg testified that at no time did the Sun Indemnity Company bill his office for any premiums. He testified that he had a running account with Kuhn, and would be billed accordingly every month. The installment of premium of $126, according to the testimony of Berg, which had been paid by Zion Funeral Parlors, Inc., to him on June 26, 1930, was tendered to the Kuhn company on or about July 18, 1930. Within three or four days after the accident of July 7, 1930, an inspector of the insurance company had called at the office of Berg and informed him that the Sun Indemnity Company claimed a forfeiture of the policy. Notwithstanding this information, Berg claims to have tendered the renewal premium to Kuhn on July 18, 1930. Berg, on cross-examination, testified that when he did business with Kuhn after May 9, 1930, he was ignorant of the fact that Kuhn was not an agent of the Sun Indemnity Company. He admitted that he knew that each borough agent's name and address is on file in the office of the Insurance Commissioner, and that when an agent ceases to be an agent there is filed in the Commissioner's office a statement to that effect. Nevertheless he made no inquiry

at the Insurance Department. There was offered in evidence the certificate of the Superintendent of Insurance to the effect that the records of the Commissioner's office show that the Sun Indemnity Company notified the Department of the termination of the employment of Louis C. Kuhn, transacting business as Louis C. Kuhn Company, as its agent under sections 91-a and 142 of the Insurance Law as of May 8, 1930. The notice of the termination of the employment of Kuhn was dated May 13, 1930, and received by the Department on that date. Berg admitted that when the policy in question was received from the Kuhn Company he checked it and found it to be the policy that was requested. The policy, at no time, was returned to him or to Kuhn, or to the Sun Indemnity Company. Berg admitted that he never received any indorsement attached to the policy or from Kuhn extending the policy for a further period of three months from May 10, 1930. Berg testified that at no time was any request in writing made to Louis C. Kuhn for an extension of the terms of the policy. Berg, however, claimed he made a verbal request, but no written memorandum or anything in the correspondence or records show that any such request was made. Berg admitted that prior to May 10, 1930, he had tendered no moneys to the Kuhn Company for the second installment. He admitted that he knew that if a request for an extension was made, in order to have the same granted, an indorsement must be made upon the policy. He admitted that the policy was forwarded to the Zion Funeral Parlors, Inc., and at no time did he receive any indorsement from the Sun Indemnity Company extending the time of the policy. He admitted that he knew that the termination date of the policy was May 10, 1930. Berg, on cross-examination, stated that the conversation about extending the policy occurred at the end of June. Later on he changed his testimony, first testifying that the oral conversation occurred June 4, 1930. Berg was asked on cross-examination: " Q. Was there any endorsement ever forwarded to you? A. No, sir. Q. When do you say this conversation with Mr. Kuhn took place? A. Which conversation? Q. The conversation with reference to extending this policy — what date do you say? A. The end of June, I think. Q. The end of when? A. The end of June. Q. Of June, 1930? A. 1930. Q. That was the only time and the first time that you ever requested Kuhn to extend this policy, Exhibit 2, is that right? It was not prior to May 10, 1930, was it? A. One moment. No, I made a mistake. My recollection is April 4, I remember well, when I paid the first quarter. Q. You want to change it now? A. I am not changing it. Please — Q. Wait a minute. Did you

testify two questions before that the first time that you had any conversation with Kuhn about the extension of this policy was in June of 1930? Did you so testify? A. I remember testifying. Q. You remember what occurred two questions before, don't you — to-day, a moment ago? A. You are trying to put in my mouth in June. If you ask me first, I will tell you. I remember receiving the first premium and paying the first quarter — I took this up with Louis C. Kuhn's office."

Later on, on cross-examination, Berg testified: " Q. No matter what you said before, when do you say now was the time that you had the conversation with Kuhn about extending the time of this policy? A. In April. Q. And what day in April? A. I do not recollect the date — about the end of April, most likely, after I paid the premium, the first quarter premium."

The above contradictory testimony of Berg should cast very grave doubt upon the truth of his testimony. It was admitted that no letter was ever written by Berg to Kuhn about the policy until after the accident happened. The only money ever paid to Kuhn by Berg and accepted by Kuhn was $168, which was the premium for the first three months' period from February 10, 1930, to May 10, 1930.

Notwithstanding this testimony and the patent attempt to show by the acts of defendant's agent that the defendant company had waived the plain terms of the policy, we are of the opinion that there was no valid policy of insurance issued by the defendant in effect at the time of the accident to the plaintiff. By the terms of the policy itself, it expired on May 10, 1930. There was no competent proof in the case that the assured complied with the terms and conditions of the policy requesting, prior to May 10, 1930, that the policy be extended and continued in force and effect. There was no payment prior to May 10, 1930, of the necessary additional premium of $126 for the said three months' extension.

Unquestionably, a policy of insurance is a contract, and its terms and conditions must be interpreted and construed the same as any other contract. There is no question in this case that the terms of the policy in question specifically provided that the period of coverage was three months from February 10, 1930. The policy provided: " T. The term of this policy is three months, beginning at noon on the 10th day of February, 1930, and ending at noon on the 10th day of May, 1930, standard time, at the Assured's address hereinafter set forth." The only premium charged was for the actual three months' period of coverage. Attached to and forming a part of the policy was the following indorsement:

" INSTALLMENT PAYMENT ENDORSEMENT
Automobile Department
Date: Feb. 10th; 1930

" The Company, having issued the undermentioned Policy for a period of three months in consideration of an advance premium of $114.00 Liab. $54.00 PD. Dollars ($168.00), hereby agrees that at the option of the named Assured the period of said Policy may be extended as follows:

" 1. If, on or before the date of expiration of the said Policy, the named Assured shall request that it be continued in force for another three months from the said date and shall pay an additional advance premium of $85.50 Liab. $40.50 PD. Dollars ($126.00) for said extension, the Company will by endorsement extend the Policy for the said period of three months to expire on August 10th, 1930, at 12 o'clock Noon, Standard Time, at the named Assured's address given in said policy."

The policy also contained the following provision: " Nothing herein contained shall be held to waive, vary, alter or extend any of the terms and conditions of the Policy other than as above stated." And, finally, the policy was expressly issued subject to condition " O " thereof as follows: " O. No erasure or change appearing on this policy as originally printed nor change or waiver of any of its terms or conditions or statements, whether made before or after the date of this policy, shall be valid unless set forth in an endorsement added hereto and signed by the President or the Secretary of the Company. Neither notice given to nor the knowledge of any agent or any other person, whether received or acquired before or after the date of this policy, shall be held to waive any of the terms or conditions or statements of this policy, or to preclude the Company from asserting any defense under said terms, conditions and statements, unless set forth in an endorsement added hereto and signed by one of the said officers."

It very clearly appears that the policy in suit afforded coverage only for a period of three months, and that said policy expired on May 10, 1930. The assured had the option to extend the policy for an additional three months by requesting that the policy be continued in force for another three months *and by paying, prior to the date of the original expiration of the policy, an additional premium of $126.* The assured did neither. Had the assured complied with that provision, the company, by indorsement in writing, would have extended the policy. The installment indorsement and the entire policy were subject to condition " O " above quoted. No change or waiver of any of the terms or conditions

of the policy before or after the date of the policy, irrespective of notice or knowledge on the part of an agent, was valid unless the change or waiver was evidenced by an indorsement attached to the policy signed by the president or secretary of the company. The provisions of condition " O " were clear and unequivocal. There could be no change in the policy or waiver of any of its terms or conditions or statements at any time, unless set forth in an indorsement added to the policy and signed by the president or secretary of the company. It seems to us that this provision of the policy negatives any possible contention advanced by the assured that at the time of the accident the assured was covered. Both Berg, who procured the policy in behalf of Zion Funeral Parlors, Inc., as its broker, and Grossman, the secretary of the assured and in charge of insuring all risks for the assured, testified that when they secured the policy, they read it and understood its terms, and that it was satisfactory and acceptable to them. The policy was never returned to the Sun Indemnity Company or to Kuhn as being unsatisfactory in its terms or conditions. No indorsement was ever received, requested or added to the policy either from Kuhn or Sun Indemnity Company. Both Berg and Grossman knew from the plain terms of the policy which they had read and found acceptable, that there could be no valid extension, change or waiver without a written indorsement thereof by the company and signed by its president or secretary. Both Berg and Grossman knew and understood by virtue of condition " O " the limits of Kuhn's authority as agent for the defendant company. They knew that without the indorsement on the policy, there could be no extension in any manner granted by an agent of the defendant. The plaintiff in this action had no greater rights than the assured had in the policy. She must be strictly held to the terms and conditions thereof. The attempt to show that the policy was extended through a manner of dealing between a broker and the agent of the assured with reference to the payment of premiums can have no bearing whatever upon the liability of the defendant company. The fact that credit may have been extended by the defendant's agent to Berg, the broker for the assured, was a matter entirely between Berg and the agent. Credit was not extended to the assured, but to the agent and in turn by the agent to the broker for their own purposes and in accordance with prior dealing between them. Because credit had been extended to the broker by the agent |the assured cannot assume that credit had been extended to it. It is the right and duty of the broker to demand immediate payment from the assured as a condition precedent to the validity of the policy. If a broker permitted the agent of the company to retain the premium for a policy collected

until applied for by the agent or the company, that is of no concern to the assured. The assured was required to pay the broker or the agent of the company when the policy was delivered. If there was to be any extension of the policy, the additional premium must be paid prior to the end of the original period. The evidence shows that the tender of the second premium of $126 for the extension was not paid to the broker until June 26, 1930. By such act of the assured there was a failure to comply with paragraph 1 of the installment indorsement hereinbefore quoted. The assured has no right to come into court now and claim that it was relying on credit which had been extended to the broker and not to it. As to the authority of an agent of an insurance company, this court in *Manson* v. *New York Life Insurance Co.* (229 App. Div. 670) discussed the power of an agent with limited authority. In the opinion in that case by this court it was said (at p. 676): " ' Where a policy permits an agent to exercise a specified authority, but prescribes that the company shall not be bound unless the execution of the power shall be evidenced by a written indorsement on the policy, the condition is of the essence of the authority, and the consent or act of the agent not so indorsed is void.' " On the authority of that case it is entirely clear that there can be no valid extension of the policy, except by way of written indorsement thereon, and that the alleged extension under the credit plan between the broker and the agent was entirely ineffective as showing a valid extension of the policy. Condition " O " of the policy clearly shows that no agent has any authority to waive or alter any of the terms or conditions of the policy. Parol evidence is not admissible to vary the plain terms of the insurance contract, nor is that rule to be avoided by claiming an alleged estoppel on the part of the company. Where an agent's authority is specifically limited by the terms of the policy, he has no right or power to waive the conditions and provisions of the policy relating to forfeiture and continuance of the insurance. (*Metzger* v. *Ætna Insurance Co.*, 229 App. Div. 26.) It was held in *Upton* v. *Travelers Insurance Co.* (179 Cal. 727; 178 P. 851) that an accident insurance company is not estopped from claiming that a policy issued lapsed from the failure of the insured to renew by payment of advance premium as provided in the policy due to reliance upon assured's local agent's promise to call for the premium, made without insurer's knowledge, where the policy expressly provided no agent could waive its terms. That an agent's authority to waive or alter the terms and conditions of the policy is limited was held in *Quinlan* v. *Providence Washington Insurance Co.* (133 N. Y. 356). The Court of Appeals (at pp. 363, 364) wrote as follows: " It is insisted that upon

the whole evidence a question was presented for the jury whether the company had waived the conditions relied upon to defeat a recovery or had consented to be bound notwithstanding their violation. The transactions and interviews between Kelsey and the plaintiff took place after Kelsey had ceased to act as the agent for the defendant; but it is claimed that the plaintiff did not know that his agency had terminated, and we shall consider the case upon the assumption that the company was bound by his acts to the same extent as if there had been no change in his relation to the defendant. The substance of the claim made by the plaintiff is that the agent of the company, invested with the power to make contracts of insurance and issue and countersign policies, may subsequently change or modify conditions therein and waive forfeitures; in short, that in respect to policies issued by him he stands in place of the company and may do whatever the company itself might do in the premises.

" The powers possessed by agents of insurance companies, like those of agents of any other corporations, or of an individual principal, are to be interpreted in accordance with the general law of agency. No other or different rule is to be applied to a contract of insurance than is applied to other contracts. The agent of an insurance company possesses such powers and such powers only as have been conferred verbally or by the instrument of authorization, or such as third persons have a right to assume that he possesses. Where the act or representation of the agent of an insurance company is alleged as the act of the principal and, therefore, binding upon the latter, the test of the liability of the principal is the same as in other cases of agency. No principle is better settled in the law, nor is there any founded on more obvious justice than that if a person dealing with an agent knows that he is acting under a circumscribed and limited authority, and that his act is outside of and transcends the authority conferred, the principal is not bound, and it is immaterial whether the agent is a general or special one, because a principal may limit the authority of the one as well as that of the other. (*Walsh* v. *Hartford Fire Ins. Co.*, 73 N. Y. 10.)

" The limitations upon the authority of Kelsey were written on the face of the policy. It declared that ' no officer, agent or representative of the company should have power to waive any provision or condition ' embraced in the printed and authorized policy, but power is given to agents to waive added provisions or conditions, provided such waiver is written upon or attached to the policy. *Where a policy permits an agent to exercise a specified authority, but prescribes that the company shall not be bound unless*

*the execution of the power shall be evidenced by a written indorsement
on the policy, the condition is of the essence of the authority, and the
consent or act of the agent not so indorsed is void.* (*Walsh* v. *Hartford
Fire Ins. Co., supra; Marvin* v. *Universal Life Ins. Co.,* 85 N. Y.
278.) The conditions violated in this case were contained in the
authorized blank, and as to these the agent had no power in any
manner, in writing or otherwise, to waive them." (Italics are the
writer's.)

The same view finds further support in the case of *O'Brien* v.
*Prescott Ins. Co.* (134 N. Y. 28). (See, also, *Greentaner* v. *Con-
necticut Fire Ins. Co.,* 228 id. 388.)

The acts of the former agent of the defendant, Louis C. Kuhn
or the Louis C. Kuhn Company, subsequent to May 9, 1930, can-
not constitute a waiver or estoppel on the part of the defendant.
The agency of Louis C. Kuhn was terminated on May 8, 1930,
two days prior to the expiration of the policy in suit. The agent's
term ended by notice to him by the company and by the filing
of a certificate with the Insurance Department of the State of
New York. The certificate of the Superintendent of Insurance
issued thereon was as follows:

" STATE OF NEW YORK,
INSURANCE DEPARTMENT
ALBANY

" GEORGE S. VAN SCHAICK
" Superintendent of Insurance

" It is hereby certified that the records of this office show that the
Sun Indemnity Company of New York notified this Department
of the termination of the employment of Louis C. Kuhn, trans-
acting business as ' Louis C. Kuhn Company,' 130 Clinton Street,
Brooklyn, N. Y., as its agent under Sections 91-a and 142 of the
Insurance Law, as of May 8, 1930. Said notices of the termination
of the employment of Mr. Kuhn were dated May 13, 1930, and
received at the Department May 13, 1930.

" IN WITNESS WHEREOF, I have hereunto set my hand and
affixed the official seal of this Department at Albany, New York,
this 13th day of October, 1934.

" GEORGE S. VAN SCHAICK,
[SEAL]                    " *Superintendent of Insurance*
                          " By JOSEPH F. COLLINS
                          " *Deputy Superintendent.*"

Therefore, under the undisputed evidence, Kuhn had no authority
whatever in the premises after May 8, 1930. It also appears
that the court before whom the action was tried committed reversible

error in its charge to the jury and in refusing to charge as requested by the defendant. However, in view of our opinion hereinbefore expressed, it is unnecessary to advert to such errors.

The judgment herein should be reversed, with costs, and the complaint dismissed, with costs.

MARTIN, P. J., McAVOY, O'MALLEY and UNTERMYER, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.