**WESTERN WORLD INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**STACK OIL, INC., Defendant–Appellant.**

**No. 626, Docket 90–7534.**

United States Court of Appeals, Second Circuit.

Argued Nov. 28, 1990.

Decided Dec. 26, 1990.

Jonathan J. Einhorn, New Haven, Conn. (Jonathan J. Einhorn, P.C., New Haven, Conn.) for appellant.

Robert G. Oliver, New Haven, Conn. (Mulvey, Oliver, Gould & Riccio, New Haven, Conn., of counsel) for appellee.

Before OAKES, CARDAMONE and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Defendant-appellant Stack Oil, Inc. ("Stack") appeals from a summary judgment entered in the United States District Court for the District of Connecticut (Ellen Bree Burns, *Chief Judge*) in favor of plaintiff-appellee Western World Insurance Company ("Western World"). Western World, the insurer, sought a declaration that it was not obligated by the insurance policy it issued to indemnify Stack, the insured, for losses sustained when vandals caused fuel oil to escape from one of Stack's holding tanks. Stack counter-

claimed for a declaration that Western World was obligated to indemnify it. The district court held that a "Total Pollution Exclusion" endorsement to the policy totally excluded coverage for Stack's clean-up expenses and related costs. We agree with the district court and affirm the judgment.

## BACKGROUND

Stack sells fuel oil. On September 26, 1985, Western World issued to Stack a Manufacturer's and Contractor's Liability Insurance Policy (the "policy"). The policy was effective for one year from September 26, 1985. One month later, on October 22, 1985, vandals entered Stack's property and opened a storage tank valve, causing approximately 70,000–80,000 gallons of fuel oil to flow into nearby waterways. Stack incurred massive clean-up costs, and demanded that Western World cover approximately $240,000 of these expenditures. In the belief that the act of vandalism was "sudden and accidental," Stack based its demand upon the following clause in the policy:

> This insurance does not apply . . . to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.*

(emphasis added).

Western World denied coverage, citing an endorsement to the policy entitled "Total Pollution Exclusion." The endorsement, dated the same day as the oil spill, October 22, 1985, but effective retroactive to September 26, 1985, provides:

> This insurance does not apply to bodily injury, personal injury, or property damage arising out of pollution or contamination caused by the discharge or escape of any pollutants or contaminants.

Thus, the endorsement, if effective, excludes *all* pollution damage, whether accidental or otherwise.

Stack disclaims all knowledge of the Total Pollution Exclusion endorsement and argues that it is simply not part of the policy. Accordingly, the facts surrounding the procurement of the policy with Western World are crucial.

Stack had previously placed its insurance with Security Insurance Company ("Security"), but its policy with Security had been cancelled effective August 20, 1985. Stack then directed William Guerrera, its insurance agent, to get the same coverage with some other company as soon as possible.

Guerrera contacted Continental Insurance Agency of Connecticut ("Continental"), which had authority to bind coverage on behalf of Western World, to discuss Western World's willingness to issue Stack the required insurance. Denise Borrelli, a Continental employee, discussed with Guerrera the terms of Western World's policy, including the fact that the policy did not afford coverage for pollution. Guerrera admitted at his deposition that he informed a principal at Stack that Western World's policy "contained no pollution [coverage]."

Anxious to remedy its uninsured status but unable to obtain insurance elsewhere, Stack authorized Guerrera to secure the policy from Western World. On or about September 26, 1985, Guerrera contacted Continental and agreed to take the coverage provided by Western World. Guerrera was admittedly not an agent of Western World, yet for reasons not entirely clear from the record, Guerrera issued to Stack a certificate of insurance, which did not contain the Total Pollution Exclusion endorsement. When Continental learned this, it reissued the certificate of insurance containing the Total Pollution Exclusion endorsement. As fate would have it, the endorsement was dated the very day of the oil spill.

Western World commenced this action for declaratory relief to determine its liability under the policy. The district court granted Western World's motion for sum-

mary judgment, finding that the Total Pollution Exclusion endorsement was intended to be part of the policy Western World issued, that the exclusion precluded coverage, and that Stack, through its authorized agent Guerrera, was aware of this from the beginning. This appeal followed.

## DISCUSSION

Upon a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). When the movant demonstrates through competent evidence that no material facts are genuinely in dispute, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-movant cannot "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts," *Borthwick v. First Georgetown Securities, Inc.*, 892 F.2d 178, 181 (2d Cir. 1989), or defeat the motion through "mere speculation or conjecture." *Knight, supra*, 804 F.2d at 12 (*citing Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985) (per curiam)). Finally, the existence of disputed facts that are immaterial to the issues at hand is no impediment to summary judgment. *See id.* at 11–12.

Stack claims that the district court, in granting Western World's motion for summary judgment, impermissibly resolved disputed factual issues. Specifically, Stack argues that there is a genuine issue as to whether the Total Pollution Exclusion endorsement was part of the policy and whether Stack knew that there was no coverage for losses caused by pollution.

■ Under Connecticut law, the rules of contract construction govern the interpretation of an insurance policy. *See Cun-*

*ninghame v. Equitable Life Assurance Society*, 652 F.2d 306, 308 (2d Cir.1981) (citing *Simses v. North American Co. for Life and Health Insurance*, 175 Conn. 77, 84, 394 A.2d 710 (1978); *Roy v. Allstate Insurance Co.*, 34 Conn.Supp. 650, 383 A.2d 637 (Super.Ct.1978)). When the terms of an insurance policy are clear and unambiguous, they must be accorded their ordinary meaning. *See id.* "[T]he meaning of particular language found in insurance policies should be examined 'in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes.'" *Newmont Mines Ltd. v. Hanover Insurance Co.*, 784 F.2d 127, 135 (2d Cir. 1986) (quoting *Champion International Corp. v. Continental Casualty Co.*, 546 F.2d 502, 505 (2d Cir.1976), *cert. denied*, 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977)).

■ Where recovery under a policy turns on the interpretation of an exclusionary clause, the insurer bears the burden of demonstrating that the loss is excluded under the express terms of the policy. *See M.H. Lipiner & Son, Inc. v. Hanover Insurance Co.*, 869 F.2d 685, 687 (2d Cir. 1989). If the exclusionary clause is ambiguous, the court must construe it in the manner most favorable to the insured. *See id.*

■ The interpretation of an insurance policy must extend to any endorsements thereto. *See Schultz v. Hartford Fire Insurance Co.*, 213 Conn. 696, 705, 569 A.2d 1131, 1136 (1990). The endorsement must control where " 'any irreconcilable conflict exists between provisions of the policy and provisions of an endorsement.'" *Id.* (quoting 13A J. Appleman, Insurance Law and Practice § 7537).

■ The question whether the Total Pollution Exclusion endorsement is part of the policy need not detain us. Despite some belated speculation about the genuineness of the endorsement,[1] Stack expressly con-

---

1. Stack claims that, because the endorsement is dated the very same day as the oil spill, a genuine issue of fact surrounds whether the endorsement was part of the policy. There is

**122**

cedes, both in its amended answer and in its counterclaim that the "policy included an endorsement ... entitled 'Total Pollution Exclusion.'" Stack at no time moved to amend its amended answer and it does not now claim fraud or mistake. This formal judicial admission is conclusive against Stack in this action. *See PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir.1984); *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir.1984).

■ That the Total Pollution Exclusion endorsement supersedes the "sudden and accidental" clause in the policy is not in dispute. Nor does Stack argue that the terms of the Total Pollution Exclusion endorsement are ambiguous or that the endorsement could be read to allow coverage for its losses. We conclude, accordingly, that the endorsement is part of the policy, that it controls whether Western World was obligated to indemnify Stack for the pollution losses, and that because the plain meaning of the endorsement precludes coverage for the oil spill, Western World was entitled to disclaim liability.

■ Stack also argues that it was unaware of the Total Pollution Exclusion endorsement. The district court rejected this contention, finding that Guerrera's deposition testimony demonstrated his knowledge of the endorsement and that because Guerrera was Stack's agent, Guerrera's knowledge must be imputed to Stack.[2] *See West Haven v. United States Fidelity & Guaranty Co.*, 174 Conn. 392, 395, 389

A.2d 741, 744 (1978). Initially, we must note that, upon acceptance of an insurance policy and in the absence of fraud or misrepresentation, an insured is charged with knowledge of all of the terms and conditions of the policy. *See Merchants Indemnity Corp. v. Eggleston*, 37 N.J. 114, 179 A.2d 505, 508 (1962); *Metzger v. Aetna Insurance Co.*, 227 N.Y. 411, 415–16, 125 N.E. 814, 816 (1920); *Manson v. New York Life Insurance Co.*, 229 A.D. 670, 675–76, 243 N.Y.S. 579, 586–87 (1st Dep't 1930). Nevertheless, we find that while Stack is properly charged with constructive knowledge, it also possessed actual knowledge of the terms of the Western World policy.

■ Although it is undisputed that Stack did not receive the policy until sometime after the oil spill, Guerrera's testimony makes clear that he was aware that the policy did not include coverage for pollution. Guerrera testified that when he sought to obtain insurance for Stack, one problem he encountered was that all insurance companies were excluding pollution coverage. Guerrera admitted that when he initially spoke to Denise Borrelli of Continental, she too told him that there was no pollution coverage and that the Western World policy had a pollution exclusion. Guerrera said that when he attempted to negotiate for pollution coverage, Ms. Borrelli stated that "the market was dead in regard to pollution ... there was ... no coverage for pollution" with Western World. Guerrera also admitted that at the

no mystery about the date of the endorsement. As discussed above, the certificate of insurance, including the endorsement, had to be reissued by Continental to cure the unauthorized issuance of at least one certificate of insurance, without the endorsement, by Guerrera. Moreover, since we concur with the district court that Stack knew that it was not covered for losses incurred as a result of pollution, *see infra*, we agree with the district court that the date of the endorsement is no more than an "interesting coincidence." Stack has not come forward with any evidence, much less a claim (e.g., for fraud or mistake), suggesting otherwise.

Stack also believes that a genuine issue of fact exists because a copy of the policy submitted by Western World to the district court differs from Stack's copy. Specifically, the copy submitted to the district court contains language, not con-

tained in Stack's copy, to the effect that any endorsements become part of the policy. As the district court noted, however, the particular endorsement in question was clearly listed on Stack's copy as included within the policy.

2. The district court refused to consider portions of the deposition testimony of Denise Borrelli tendered by Stack to support its opposition to Western World's summary judgment motion. The court rejected the evidence because it was submitted after oral argument and without the exhibits to which the testimony refers. We do not agree with Stack's claim that this was an abuse of discretion. In any event, we have considered Ms. Borrelli's testimony and find that, at most, it creates an issue concerning whether a preliminary binder was issued to Stack, a fact that is utterly immaterial to the disposition of Western World's motion.

time he contacted Continental to bind the coverage, he was aware that the Western World policy had no pollution coverage. Indeed, Guerrera stated that he informed Stack, in a series of conversations, that he had trouble securing the same coverage that Stack had obtained from Security, that he was unsuccessful in obtaining coverage with any company except Western World, and that Western World's policy did not cover pollution.

These facts conclusively establish Stack's knowledge, through its authorized agent, that the policy it procured from Western World did not cover pollution.

## CONCLUSION

Having considered and rejected Stack's arguments on appeal, we affirm the district court's entry of summary judgment in fa-.vor of Western World.