**Susan ZIPOLI, Administrator of the Estate of John Zipoli, Jr., Plaintiff,**

v.

**Nestor CARABALLO, Edward P. Foster, Jose Santiago, and City of Hartford, Defendants.**

**Civ. No. 3:06CV00388 (AWT).**

United States District Court, D. Connecticut.

March 30, 2009.

John R. Williams, New Haven, CT, for Plaintiff.

Helen Apostolidis, Bird & Apostolidis, Middletown, CT, for Defendants.

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ALVIN W. THOMPSON, District Judge.

Susan Zipoli, administrator of the estate of John Zipoli, Jr., ("Zipoli"), has filed the instant action against the individual defendants, Nestor Caraballo ("Caraballo"), Edward P. Foster ("Foster"), and Jose Santiago ("Santiago"), claiming that they acted unreasonably in their use of deadly force against Zipoli in the course of executing a search warrant, and that the defendants exhibited deliberate indifference to Zipoli's medical needs in violation of 42 U.S.C. § 1983 and Connecticut law. The complaint also includes claims against the City of Hartford. The defendants have moved for summary judgment. The plaintiff has withdrawn all claims for unreasonable use of force and all claims against the City of Hartford. Her remaining claim against the individual defendants is for deliberate indifference to serious medical needs. For the reasons set forth below, the court is granting the defendants' motion for summary judgment on that claim.

### I. FACTUAL BACKGROUND

On May 25, 2004, at a few minutes before 5:00 p.m., members of the Hartford Police Department's Vice and Narcotics Division proceeded to execute a search and seizure warrant at 461 Zion Street, Apartment 1N, in Hartford, Connecticut. When they arrived at the apartment building, the detectives were in plain clothes but wore protective body armor that was marked with the word "POLICE" on the front and back. Caraballo and other officers approached the exterior door but could not open it. Caraballo broke it open with a ram. Santiago held the exterior door open and provided Caraballo with cover as he turned to approach Zipoli's first floor apartment. When he did not receive a response after knocking and announcing his presence, Caraballo used the ram to force entry into the apartment. As the officers entered the apartment, Zipoli fired his shotgun, hitting Caraballo in his torso, arm, and face. Caraballo fell, and as he did, he knocked backwards, and out the exterior door of the apartment building, two other officers who were behind him. The exterior door slammed shut. Santiago then entered the apartment and was confronted by Zipoli, who shot at him. Santiago shouted "Hartford Police", and returned fire. Foster also entered the apartment and exchanged gunfire with Zipoli. After the exchange, Zipoli slid himself and his shotgun towards the back of the apartment so that only his leg and the barrel of the shotgun were visible. At this point, Santiago, who had been hit by one of the volleys, was taken out of the building, led into a police cruiser, and transported to Hartford Hospital. The remaining officers

eventually confirmed with Zipoli that he was alone and they approached him, revolvers drawn. Zipoli was lying on the floor and bleeding, and he complained of pain and difficulty breathing. Detective Renaul Johnson handcuffed Zipoli and relayed to the other officers that he was secured. After the scene was secured, Foster was instructed to accompany Caraballo to a waiting ambulance, and he rode with him to the emergency room at Hartford Hospital. An officer requested medical assistance for Zipoli and stayed with him until the "ambulance and the EMTs arrived and took him to the hospital, a few minutes later." (Johnson Aff. at ¶ 19.)

Around the time that the first shots were heard, a police officer radioed that shots had been fired, officers had been hit, and that an ambulance was necessary. The city records all communications of emergency personnel onto a master tape which contains a clock that reflects the time each communication was made. According to the master tape for that day, at 5:00 p.m. ambulance # 912 reported that it was on the way to the scene. At 5:01 p.m., ambulance # 225 reported that it was en route to the scene. At 5:03 p.m., both ambulances reported having arrived at the scene. At 5:03 p.m. an officer reported that it was all clear inside the building. At 5:06 p.m., ambulance # 912 took Caraballo, who was accompanied by Foster, to the hospital. At 5:07 p.m., it was reported that ambulance personnel had entered the building. At 5:09 p.m., an officer reported that Santiago was at the hospital and was alert and that Caraballo was en route to the hospital. At 5:15 p.m., ambulance # 225 reported that it was en route to the hospital with Zipoli.

Officer Ian Thompson rode in the ambulance with Zipoli to Hartford Hospital. The ambulance arrived there at 5:17 p.m. Zipoli was declared dead at 5:33 p.m.

## II. *LEGAL STANDARD*

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994). Rule 56(c) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir. 1987); *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined ... to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of *some* al-

leged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." *Id.* As the Court observed in *Anderson:* "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* Thus, only those facts that *must* be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. *See Howard v. Gleason Corp.,* 901 F.2d 1154, 1159 (2d Cir.1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in [its] favor." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (quoting *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." *Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 315 (2d Cir.1997) (quoting *West-*

*ern World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which [a] jury could reasonably find for the [nonmovant]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings because the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. *See Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," *Weinstock,* 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, ... [and] must come forward with specific facts showing that there is a genuine issue for trial." *Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir.1993) (quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." *Weinstock,* 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted.

## III. DISCUSSION

The complaint alleges that the individual defendants are responsible "for deliberate indifference to [Zipoli's] serious medical needs" (Am. Compl. at ¶ 11), because they "refused to provide [Zipoli] with necessary medical care although they knew or should have known that he was gravely wounded." (Am. Compl. at ¶ 8.) In her memorandum in opposition to the instant motion, the plaintiff effectively amends the factual allegations upon which the deliberate indiffer-

ence claim is based, stating that the defendants "unreasonably delay[ed] the removal of the deceased from the location where he was shot, and [his transportation] to the hospital for treatment." (Pl.'s Opp. at 6.) However, the plaintiff has not produced evidence that could establish the claim of deliberate indifference based on either theory.

■■■ The Supreme Court has stated that the Due Process Clause requires the government to provide medical care to persons injured while being apprehended by police. *See Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983). *See also Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir.1989)(holding that the Fourth Amendment standard applies to a pre-trial detainee). The constitutional obligation is met by seeing that the arrestee is taken "promptly to a hospital that provide[s] the treatment necessary for his injury." *Revere*, 463 U.S at 245, 103 S.Ct. 2979. The official custodian of that person may be found liable for violating the detainee's due process rights if (1) the official denied treatment needed to remedy a serious medical condition and (2) did so because of deliberate indifference to that need. *See Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir.1996). While the Eighth Amendment's protections of prisoners from cruel and unusual punishment due to the "deliberate indifference to serious medical needs of prisoners" does not specifically apply, *Revere*, 463 U.S. at 243–44, 103 S.Ct. 2979, the Court has found that the protections afforded under the Due Process Clause are as least as great as the Eighth Amendment in these situations. *See id.* at 244, 103 S.Ct. 2979.

■■■ This standard "incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indiffer-

ence' element ensures that the [official] acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183–184 (2d Cir.2003)(internal citations and quotations omitted).

■■■ In the context of the Eighth Amendment, a serious medical condition is defined as a "condition of urgency, one that may produce death, degeneration, or extreme pain," *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994). Multiple gun shots qualifies as a serious medical condition for purposes of this test. The court therefore turns to the issue of deliberate indifference.

■■■ In *Weyant*, the Second Circuit noted that deliberate indifference can be shown by evidence that the official acted with "reckless disregard for the substantial risk posed by the detainee's serious medical condition." 101 F.3d at 856. A plaintiff must show "something more than mere negligence; but proof of intent is not required, for the deliberate-indifference standard is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* (internal quotations and citations omitted). Instead, the official must be aware of facts from which he or she should have recognized the risk of substantial harm to the injured person. *See Hathaway*, 37 F.3d at 66.

The Second Circuit has drawn a distinction between the refusal to give medical treatment and a delayed response in giving medical treatment. *See Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir.2000).

***Refusal to Provide Necessary Medical Care***

■■■ The plaintiff claims that the individual defendants "refused to provide [Zipoli] with necessary medical care although they knew or should have known that he was gravely wounded." (Am. Compl. at

¶ 8.) Yet the plaintiff fails to produce any evidence that could create a genuine issue of material fact as to whether the individual defendants refused treatment to Zipoli. It is undisputed that an officer requested an ambulance for both Caraballo and Zipoli. As soon as the scene was secured, an officer asked for medical assistance for Zipoli and stayed with him until the EMTs arrived. Another officer rode inside the ambulance with Zipoli to the hospital. None of these actions is consistent with a refusal to provide medical care. Rather, the facts, undisputed by the plaintiff, demonstrate that an ambulance was called by the police and that Zipoli arrived at the hospital about 14 minutes after the scene was secured.

### Unreasonable Delay in Providing Medical Care

The plaintiff also claims the individual defendants "unreasonably delay[ed] the removal of the deceased from the location where he was shot...." (Pl.'s Opp. at 6.) The claim is based on the difference between the time it took to get the wounded officers to the hospital and the time it took to get Zipoli to the hospital.

Zipoli was not under the control of officers until approximately six to seven minutes after he opened fire. At that time, i.e. 5:03 p.m., the ambulance he was transported in was already at the scene. After entering the building and tending to Zipoli's needs, ambulance personnel reported that they were en route to the hospital with him twelve minutes later, and at the hospital two minutes after that.

The plaintiff speculates that between 5:07 p.m., when ambulance personnel entered the building, and 5:15 p.m. when the ambulance crew reported that it was en route to the hospital, emergency personnel were either somehow thwarted from transporting Zipoli to the hospital, or that Zipoli "got his turn" only after wounded officers

had received treatment. The plaintiff's conclusory argument is not supported by the only inferences that are reasonable based on the record here.

First, while both Caraballo and Zipoli were on the first floor of the apartment building, Caraballo was near the entrance to the apartment, and Zipoli had moved to the rear of the apartment. Thus, Caraballo was the first wounded person that ambulance personnel would encounter, and the physical layout of the apartment is such that ambulance personnel, their equipment, and the stretcher would have had to go past Caraballo to get to Zipoli first. (*See* Floor Plan, Def.'s R. 56(a)(1) Stat., at Ex. N.)

Second, as to the individual defendants, Foster accompanied Caraballo to the emergency room at Hartford Hospital, and Santiago had been walked to a police cruiser and sent to Hartford Hospital for treatment before the scene was secured. Therefore, even assuming *arguendo* that the plaintiff could create a genuine issue of material fact on the issue of unreasonable delay, the plaintiff has not produced any evidence to attribute any delay to any of the individual defendants.

## IV. CONCLUSION

For the reasons set forth above, the defendant's Motion for Summary Judgment (Doc. No. 34) is hereby GRANTED.

The Clerk shall enter judgment in favor of the defendants on all claims and close this case.

It is so ordered.