**POINT DEVELOPERS, INC., Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as successor in interest to the Resolution Trust Corporation, as Receiver and Final Receiver of State Savings, FSB, and as Receiver of State Savings, FA, Defendants.**

No. CV 94–0950 (ADS).

United States District Court,
E.D. New York.

April 13, 1996.

---

Jessel Rothman, P.C., Mineola, New York, for Plaintiff.

Windels, Marx, Davies & Ives, New York City (Anthony A. Dean, of counsel), for Defendant The Resolution Trust Corporation as Receiver for State Savings FSB.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This lawsuit arises from the claims of the plaintiff, Point Developers, Inc. (the "plaintiff" or "Point Developers") against the original defendant in this lawsuit, the Resolution Trust Corporation ("RTC"), as Receiver for both State Savings, FSB, ("State FSB") and State Savings, FA ("State FA"), based on an alleged breach of a loan agreement. Specifically, Point Developers contends that the RTC breached its obligation to convert short term construction loans into long term financing pursuant to the terms of a loan commitment letter executed by the plaintiff and the RTC's predecessor in interest, State FA. The RTC denies any obligation under the commitment letter.

Presently before the Court is the defendant's motion for summary judgment in its favor pursuant to Fed.R.Civ.P. 56. In support of its motion, the RTC makes two arguments. First, the RTC argues that the language the plaintiff relies on in support of the defendant's alleged obligation to provide the long term financing is so vague as to render it unenforceable. Second, the defendant contends that even if the terms of the commitment letter are sufficiently definite, any obligations contained therein are subsumed by a subsequent loan agreement executed by the plaintiff, which is a fully integrated document making no provision for long term financing. Accordingly, any evidence of an obligation to provide such financing is barred by the parol evidence rule.

The Court notes that on January 17, 1996, subsequent to the RTC's filing its motion for summary judgment, the Federal Deposit Insurance Corporation ("FDIC") has been substituted for the RTC as the defendant pursuant to 12 U.S.C. § 1441a(m)(1). However, in an effort to keep this decision consistent with the parties' motion papers, the Court will continue to refer to the defendant as the RTC.

## I. *Background*

Point Developers is a New York corporation engaged in the business of residential housing development. State FA was a federally chartered savings and loan association existing under the laws of the United States, and was a federally insured depository institution.

According to the amended complaint and supporting affidavits, on or about May 31, 1989, Point Developers executed a building loan commitment letter ("Commitment Letter") with State FA, in connection with four short-term construction loans for building residential housing in Maspeth, New York. Each loan was for the amount of $250,000, to be advanced in stages depending upon the progress of the construction.

The plaintiff alleges that according to the terms of the Commitment Letter, upon satisfactory completion of all the construction, each of the four loans would be converted to a $300,000 permanent long-term mortgage loan, payable over a 30 year term. Point Developers bases this allegation on language contained in "Supplemental Form (A)" incorporated in the Commitment letter which reads: "Permanent Loan: $300,000 @ prevailing rate plus 1 additional point." On August 31, 1989, Point Developers executed a loan agreement ("Loan Agreement"), creating four mortgages in favor of State FA as mortgagee, and four accompanying promissory notes. The original notes required repayment of the loans by August 31, 1990. According to the plaintiff, the buildings were satisfactorily completed on February 28, 1991 and on that date, Point Developers sought to have the short term construction loans converted to long term mortgages.

The plaintiff further alleges that State FA was amenable to the conversion, when the United States Office of Thrift Supervision declared State FA insolvent on March 21, 1991. On that same day a new bank, State Savings FSB ("State FSB") was chartered. To facilitate the transfer of assets from State FA to State FSB, the RTC was appointed the receiver of State FA, and the conservator of State FSB. All of State FA's assets, including the plaintiff's construction loans, were assigned to State FSB.

Point Developers claims that after the RTC took over as the State FSB conserva-

tor, State FSB agreed to comply with the terms of the Commitment Letter and convert the construction loans to permanent financing. Furthermore, the plaintiff asserts that the permanent loan documents were being prepared as of March 19, 1992, when State FSB failed and the RTC was appointed as receiver. As receiver, the RTC elected to liquidate the State FSB's assets. On May 26, 1992, the plaintiff filed an administrative claim against State FSB in the sum of $1.2 million. That claim was disallowed by the RTC on January 6, 1994.

Point Developers filed its first complaint on September 3, 1993, and an amended complaint on November 17, 1993, seeking injunctive relief. This Court dismissed the amended complaint on January 21, 1994 for lack of subject matter jurisdiction based on the anti-injunction provisions of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), *see* 12 U.S.C. § 1821(d)(2)(A), (B), (E); 12 U.S.C. § 1821(j), reasoning that injunctive relief is not available against the RTC and that the plaintiff's only remedy was for money damages. Familiarity with the Court's earlier decision is presumed.

On November 11, 1994, the plaintiff filed its first amended complaint in a second lawsuit seeking money damages. In this second complaint, Point Developers claims that it would not have entered into the Commitment agreement had State FA not agreed to convert the construction loans to permanent financing. According to the plaintiff, conversion of the loans is necessary because upon completion of construction, the building would not yet have a buyer and the apartments would not be rented. A method of financing repayment over an extended period was required in order to prevent default by the developer. Toward this end, it was State FA's custom and practice to convert construction loans into long-term mortgage financing to accommodate the developer. Point Developers further claims that this policy makes the properties more marketable because they each have a mortgage loan for a purchaser to assume.

## II. *Discussion*

### A. *The summary judgment standard*

■ A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Terminate Control Corporation v. Horowitz,* 28 F.3d 1335, 1352 (2d Cir.1994) (quoting *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990)), and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Institute for Shipboard Education v. Cigna Worldwide Insurance Co.,* 22 F.3d 414, 418 (2d Cir.1994); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990).

■ Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)); *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *Converse v. General Motors Corp.,* 893 F.2d 513, 514 [2d Cir.1990]. If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Lane v. New York State Electric & Gas Corp.,* 18 F.3d 172, 176 (2d Cir.1994); *Rattner v. Netburn,* 930 F.2d 204 (2d Cir.1991).

■ However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Western World,* 922 F.2d at 121. Although the non-moving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment, Fed.

R.Civ.P. 56(c) and (e) provide that the non-moving party cannot rest on the pleadings but must set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions on file showing there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *United States v. Rem,* 38 F.3d 634 (2d Cir.1994).

■ Finally, when determining a motion for summary judgment, the Court is charged with the function of "issue finding", not "issue resolution." *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994); *Eye Assocs., P.C. v. IncomRx Sys. Ltd. Partnership,* 912 F.2d 23, 27 (2d Cir.1990).

**B. *The RTC's motion for summary judgment***

As stated above the defendant moves for summary judgment on two separate grounds. First, the RTC contends that the terms of the Commitment Letter are so vague as to render them unenforceable. Second, even if the terms of the Commitment Letter are sufficiently definite, the terms of the Commitment Letter are precluded as evidence of the parties' obligations under the parol evidence rule because the plaintiff subsequently executed the Loan Agreement on August 31, 1989, which is a fully integrated document and makes no reference to long term financing. However, to facilitate the analysis, the Court will address the latter argument first, because a finding that the plaintiff is precluded from enforcing the terms of the Commitment Letter under the parol evidence rule would obviate the need to determine whether these terms are sufficiently definite to enforce.

**1. *Integration***

■ Where the parties have reduced an agreement to an integrated writing, the parol evidence rule bars all evidence of prior or contemporaneous negotiations or agreements offered to modify or contradict the provisions of the writing. *See, e.g., Marine Midland Bank–Southern v. Thurlow,* 53 N.Y.2d 381, 387, 442 N.Y.S.2d 417, 419–20, 425 N.E.2d 805, 807–09 (1981); *Adler &*

*Shaykin v. Wachner,* 721 F.Supp. 472, 476 (S.D.N.Y.1988) (Walker, J.). To determine whether an agreement is fully integrated, the Second Circuit has recently recognized that:

> Under New York law, where, as here, the written agreement does not contain a merger clause, the court must determine whether the agreement is integrated "by reading the writing in the light of surrounding circumstances, and by determining whether or not the agreement was one which the parties would ordinarily be expected to embody in the writing." *Braten v. Bankers Trust Co.,* 60 N.Y.2d 155, 468 N.Y.S.2d 861, 864, 456 N.E.2d 802, 804 (1983) (quoting *Ball v. Grady,* 267 N.Y. 470, 472, 196 N.E. 402 (1935)). The "decision in each case must, of course, turn upon the type of transaction involved, the scope of the written contract" and the content of any other agreements asserted. *Fogelson v. Rackfay Constr. Co.,* 300 N.Y. 334, 338, 90 N.E.2d 881 (1950).

*Bourne v. Walt Disney Co.,* 68 F.3d 621, 627 (2d Cir.1995). As Judge Walker noted in *Adler & Shaykin,* the factors that the New York courts look to when making a determination as to whether a contract is fully integrated include:

> whether the document in question refers to the oral agreement, or whether the alleged oral agreement between the parties "is the sort of complex arrangement which is customarily reduced to writing" *Manufacturers Hanover Trust Co[.] v. Margolis,* 115 A.D.2d 406, 407–[0]8, 496 N.Y.S.2d 36, 37 (1st Dep't 1985); whether the parties were represented by experienced counsel when they entered into the agreement, *Pecorella v. Greater Buffalo Press, Inc.,* 84 A.D.2d 950, 446 N.Y.S.2d 709 (4th Dep't 1981); whether the parties and their counsel negotiated during a lengthy period, resulting in a specially drawn out and executed agreement, and whether the condition at issue is fundamental, *Braten* [,] 60 N.Y.2d at 162, 468 N.Y.S.2d at 864, 456 N.E.2d [at] 805 ...; if the contract, which does not include the standard integration clause, nonetheless contains wording like "in consideration of the mutual promises herein contained, it is agreed and covenanted as

follows," and ends by stating that 'the foregoing correctly sets forth your understanding of our Agreement' ", *Lee v. Joseph E. Seagram & Sons,* 413 F.Supp. [693, 701 (S.D.N.Y.1976) ].

*Adler & Shaykin,* 721 F.Supp. at 477.

In *Saxon Capital Corp. v. Wilvin Assocs.,* 195 A.D.2d 429, 600 N.Y.S.2d 708 (1st Dep't 1993) the Appellate Division applied these principles to find that the loan documents at issue were not integrated where such a finding was contrary not only to the parties' understanding, but would also undermine the purpose of the contract. In *Saxon,* the plaintiff was suing for breach of contract where the defendants hired the plaintiff to secure financing for the purchase of real estate in Buffalo, New York in order to construct a computer facility for lease to the IRS. *Id.,* 600 N.Y.S.2d at 708. In explaining their requirements to the plaintiff, the defendants "made it absolutely clear . . . that any financing would necessarily have to be approved by [the United States General Services Administration,] the GSA as a precondition of awarding the lease." *Id.,* 600 N.Y.S.2d at 708–09. The plaintiff then drew up a brokerage agreement without mentioning the requirement that financing receive GSA approval. The defendant signed the agreement without having an attorney review it.

Subsequently, the defendant obtained financing from a third party which the GSA found unsatisfactory. Nevertheless, Saxon sued for its commission based on the above mentioned agreement which did not contain a clause making Saxon's fees conditional upon GSA approval. The trial court agreed finding the condition of GSA approval precluded by the parol evidence rule and granted summary judgment to Saxon.

The Appellate Division reversed, reasoning that the agreement contained no merger clause, "and the surrounding circumstances strongly suggest that the contract was not an integrated one, and therefore extrinsic evidence would be admissible to supply the terms that the parties intended to incorporate into their agreement." *Id.,* 600 N.Y.S.2d at 709, citing, *Braten,* 60 N.Y.2d 155, 468 N.Y.S.2d 861, 456 N.E.2d 802. Among the factors that the First Department

found significant in reaching this decision was that "the condition of GSA approval was so central to the purpose of the loan that the condition might well have been perceived by the defendants as self-evident and its omission unremarkable." *Id.*

Applying the principles set forth in *Bourne, Braten, Adler & Shaykin,* and *Saxon* the Court finds that parties' Loan Agreement, like the one in *Saxon,* is not fully integrated and therefore, extrinsic evidence is admissible to supply the remaining terms of the parties' overall understanding. In reaching this conclusion, the Court relies on several factors.

Initially, the Court notes that although the Loan Agreement provides only for short term construction loans, the Commitment Letter further provides for a "Permanent Loan: $300,000 @ prevailing rate plus one additional point." According to the deposition testimony of Leroy P. Busse, a former State FA senior vice president, this "Permanent Loan" language meant that "if the building loan was completed in accordance with all the terms, . . . it would pretty much guarantee [the long term financing] provided the borrower or purchaser qualified."

Second, the plaintiff provides evidence of past practice which establishes a pattern of short term construction loans being converted to long term financing where the loan agreement made no reference to long term mortgages. For example, the plaintiff offers proof that when the same "Permanent Loan" language was used in a similar loan agreement between State FA and Woodcut Developers, another development firm in which the principals of Point Developers had controlling interests, the bank permitted the development company to convert the short term financing into a thirty year mortgage.

Finally, the complaint alleges that the "[p]laintiff would not have entered into the agreement of May 31, 1989, if State FA had not agreed to convert the construction loans into permanent loans." According to Point Developers, the real estate market at the time made it otherwise "impossible" to obtain a loan unless the developer already had a buyer willing to undertake a mortgage. Fur-

thermore, the plaintiff alleges that State FA knew and acknowledged that without the ability to convert the short term financing to permanent loans, Point Developers would have been unable meet the requirements of the short term construction loan agreement.

In light of these surrounding circumstances, the Court finds that the loan agreement was not fully integrated. Accordingly, the parol evidence rule is inapplicable and the plaintiff is entitled to introduce evidence extrinsic to the Loan Agreement to establish whether the defendant was obligated to provide Point Developers with long term financing pursuant to the terms of the Commitment Letter.

Parenthetically, the Court notes that the defendant would have the Court presume that Loan Agreement is fully integrated pursuant to the New York Court of Appeals decision, in *W.W.W. Assocs., Inc. v. Giancontieri*, (*"WWW"*) 77 N.Y.2d 157, 565 N.Y.S.2d 440, 566 N.E.2d 639 (1990). However, *WWW* is distinguishable. In that case, the court held that the agreement was fully integrated where the contract contained a merger clause providing that "[a]ll prior understandings between seller and purchaser are merged in this contract [and it] completely expresses their full agreement. It has been entered into after full investigation, neither party relying upon statements made by anyone else that are not set forth in this contract." *WWW*, 77 N.Y.2d at 160, 565 N.Y.S.2d at 441–42, 566 N.E.2d at 640–42. By contrast, this case addresses a loan agreement with no comparable merger clause. Accordingly, under *Bourne* and *Braten* the Court undertook its own analysis as to whether the loan agreement was an integrated document, and upon doing so, determined that it was not.

### 2. *Sufficiency of the terms*

■ Having determined that the Loan Agreement does not contain a complete integration of the parties' agreement, the Court now turns to the defendant's second argument, that the "Permanent Loan" language contained in the Commitment Letter is insufficient to obligate the RTC to provide long term financing. Specifically, the defendant asserts that the language "Permanent Loan:

$300,000 @ prevailing rate plus 1 additional point" demonstrates "[a] mere 'agreement to agree' which leaves some material terms open for future negotiation [and therefore] does not constitute a valid enforceable contract." Def.Mem. of Law at 8. In support of its position, the RTC contends the language at issue fails to provide many material terms including:

1. The term of the loan;

2. The repayment schedule (monthly, quarterly, etc.) and whether payment is due at the beginning or end of the period;

3. The amortization schedule and the amount of each periodic payment;

4. The actual interest rate;

5. Whether the interest rate is fixed or fluctuating and if it fluctuates how often it is adjusted;

6. The security interest to State FA if any;

7. Whether State FA was entitled to an appraisal before extending any additional credit; and

8. Which party will be responsible for payment of taxes, insurance, assessments and the like and whether any escrow would be created for this purpose.

In further support of this argument, the RTC contends that the plaintiff's pleadings and deposition testimony admit that the "Permanent Loan" language could constitute nothing more than an agreement to agree. For example, the amended complaint alleges that State FSB "had agreed to comply or recommend compliance with the commitment and prepare permanent loans." The defendant reads this language as recognizing that if there was an existing obligation to provide permanent financing, then no recommendation would have been necessary. In addition the RTC relies on the deposition testimony of Busse, who, when he testified that the language at issue would "pretty much guarantee" the long term financing, meant only that such financing would be considered by State FA and most likely approved, not that an

1022

obligation to provide long term financing already existed.

Finally, the defendant notes that in State FA's minutes discussing either Point Developers, or agreements to provide long term financing, there is no discussion of long term loan arrangements with regard to the plaintiff. Based on these arguments, the RTC claims that there are no issues of material fact, and that summary judgment dismissing the complaint is appropriate. The Court disagrees.

 As the New York Court of Appeals recognized in *166 Mamaroneck Avenue Corp. v. 151 East Post Road Corp.,* 78 N.Y.2d 88, 91, 571 N.Y.S.2d 686, 687, 575 N.E.2d 104, 105 (1991),

> The doctrine of definiteness or certainty is well established in contract law. In short, it means that a court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to. . . . As we noted recently in *Cobble Hill,* "[i]f an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." . . . Further, "a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable." *Martin Delicatessen v. Schumacher.*

*166 Mamaroneck,* 78 N.Y.2d at 91, 571 N.Y.S.2d at 687, 575 N.E.2d at 105, citing, *Cobble Hill Nursing Home v. Henry & Warren Corp.,* 74 N.Y.2d 475, 548 N.Y.S.2d 920, 548 N.E.2d 203 (1989); *Joseph Martin, Jr., Delicatessen v. Schumacher,* 52 N.Y.2d 105, 436 N.Y.S.2d 247, 417 N.E.2d 541 (1981).

 However, the New York courts have "not applied the definiteness doctrine rigidly" because "[c]ontracting parties are often imprecise in their use of language, which is, after all, fluid and often susceptible to different and equally plausible interpretations." *166 Mamaroneck,* 78 N.Y.2d at 91, 571 N.Y.S.2d at 687, 575 N.E.2d at 105. Rather, the courts recognize that at some point, almost every agreement has a degree of indefiniteness. *Cobble Hill,* 74 N.Y.2d at 483, 548 N.Y.S.2d at 923, 548 N.E.2d at 206. As a result, if the doctrine were "applied with a heavy hand it may defeat the reasonable expectations of the parties in entering into the contract." *Id.,* citing, *Heyman Cohen & Sons v. M. Lurie Woolen Co.,* 232 N.Y. 112, 114, 133 N.E. 370 (1921) (Cardozo, J.). Accordingly, "[t]he conclusion that a party's promise should be ignored as meaningless 'is at best a last resort.'" *Id.,* quoting, *Cohen & Sons,* 232 N.Y. at 114, 133 N.E. at 370.

 In *Martin Delicatessen,* the New York Court of Appeals recognized two ways in which to satisfy the definiteness requirement in the absence of an explicit contract term. First, an agreement could contain a "methodology" for determining the missing term within the four corners of the agreement. *Martin Delicatessen,* 52 N.Y.2d at 110, 436 N.Y.S.2d at 249–50, 417 N.E.2d at 543–45. Second, the agreement could "invite[ ] recourse" to extrinsic evidence which would supply the missing terms. *Id.; see also 166 Mamaroneck,* 78 N.Y.2d at 91–92, 571 N.Y.S.2d at 688, 575 N.E.2d at 106.

Applying these standards the Court finds that the agreement between the plaintiff and State FA is sufficiently definite to preclude summary judgment. As stated above, the Commitment Letter, at Supplemental Form A provides "Permanent Loan: $300,000 @ prevailing rate plus 1 additional point." While the Court is mindful that this language does appear to omit a number of terms such as how the prevailing rate is to be determined, the payment schedule and the duration of the long term loan, the Court finds that these omissions are not fatal to the plaintiff's claims as a matter of law, at this point.

The Court has already determined that the Loan Agreement is not a fully integrated document. As a result, the parties are entitled to look to extrinsic evidence to further flesh out the contours of their understanding. Such extrinsic evidence may include the past practices between the plaintiff's principals and State FA, such as the obligations under the Woodcut Developers contract which contained the same terms as the Commitment Letter at issue here, or the other terms of the Commitment Letter itself, which, for example, provides in other sections that the prevailing rate should be taken from Chemical Bank. While the Court is mindful of the

limited nature of the language at issue, and makes no determination as to the merits of the plaintiff's position, the available possible extrinsic evidence precludes summary judgment in favor of the defendant at this juncture.

III. *Conclusion*

Having reviewed the parties' submissions, and heard oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the defendant's motion for summary judgment pursuant to Fed. R.Civ.P. 56 is denied.

SO ORDERED.