**POINT DEVELOPERS, INC., Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as successor in interest to the Resolution Trust Corporation, as Receiver and Final Receiver of State Savings, FSB, and as Receiver of State Savings, FA, Defendant.**

**No. CV 94–0950 ADS.**

United States District Court,
E.D. New York.

April 5, 1997.

Jessel Rothman, P.C., Mineola, New York, for Plaintiff; by Julian Kaplan, of counsel.

Windels, Marx, Davies & Ives, New York, N.Y., for Defendant Federal Deposit Insurance Corporation; by Anthony A. Dean, of counsel.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This lawsuit arises from the claims of the plaintiff, Point Developers, Inc. (the "plaintiff" or "Point Developers") against the original defendant in this lawsuit, the Resolution Trust Corporation ("RTC"), as receiver for both State Savings, FSB, ("State FSB") and State Savings, FA ("State FA"), based on an alleged breach of a loan agreement. On January 17, 1996, the Federal Deposit Insurance Corporation ("FDIC") was substituted for the RTC as the defendant pursuant to 12 U.S.C. § 1441a(m)(1). Point Developers contends that the RTC, as predecessor to the FDIC, breached its obligation to convert short term construction loans into long term financing pursuant to the terms of a loan commitment letter executed by the plaintiff and the RTC's predecessor in interest, State FA. The FDIC denies that it has any obligation under the commitment letter.

Presently before the Court is the defendant's second motion for summary judgment pursuant to Fed.R.Civ.P. 56. In support of its motion, the FDIC makes two arguments. Initially, the defendant argues that the plaintiff's claims should be dismissed pursuant to 12 U.S.C. §§ 1821(d)(9)(A) and 1823(e). Alternatively, the FDIC contends that Point Developers' claims are barred under the principles of collateral estoppel and res judicata.

### I. Background

Point Developers is a New York corporation engaged in the business of residential housing development. State FA was a feder-

ally chartered savings and loan association existing under the laws of the United States, and was a federally insured depository institution.

On or about May 31, 1989, Point Developers executed a building loan commitment letter ("Commitment Letter") with State FA, in connection with four short-term construction loans for building residential housing at 54–14, 54–16, 54–20 and 54–22, 73rd Place in Maspeth, New York.

On August 31, 1989, Point Developers executed four building loan mortgage notes in connection with the Commitment Letter. The notes evidenced four $250,000 loans, which were secured by four mortgages, one on each property. The loans were to be advanced in stages dependent upon the progress of the construction. The original notes required repayment of the loans by August 31, 1990. According to the plaintiff, the buildings were satisfactorily completed on February 28, 1991 and on that date, Point Developers sought to have the short term construction loans converted to long term mortgages. According to the defendant, on that same day, the construction loans matured and Point Developers "effectively defaulted" as the result of the failure to make payments.

The plaintiff alleges that according to the terms of the Commitment Letter, upon satisfactory completion of the construction, each of the four obligations would be converted to a $300,000 permanent long-term mortgage loan, payable over a 30 year term. Point Developers bases this allegation on, among other things, language contained in "Supplemental Form (A)" incorporated into the Commitment letter which reads: "Permanent Loan: $300,000 @ prevailing rate plus 1 additional point." The FDIC responds that this language is insufficiently definite to be enforceable and that "[n]either the minutes of the Board of Directors nor of the Loan Committee of State FA reflect that the Board of Directors or the Loan Committee approved the [Commitment] Letter, the Construction Loans or any purported agreement to convert the construction loans to permanent financing or provide other permanent financing." Def. Mem. of Law at 3.

On March 21, 1991, the United States Office of Thrift Supervision ("OTS") declared State FA to be insolvent. On that same day a new bank, State Savings FSB ("State FSB") was chartered. To facilitate the transfer of assets from State FA to State FSB, the RTC was appointed receiver of State FA, and conservator of State FSB. All of State FA's assets, including the plaintiff's construction loans, were assigned to State FSB. On March 26, 1992, the OTS appointed the RTC receiver of State FSB. As receiver, the RTC succeeded to the assets of State FSB and was charged with the liquidation of State FSB pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183 (1989).

On May 26, 1992, the plaintiff filed an administrative claim against State FSB in the sum of $1.2 million. That claim was disallowed by the RTC on January 6, 1994.

Point Developers filed its first complaint on September 3, 1993, and an amended complaint on November 17, 1993, seeking injunctive relief. This Court dismissed the amended complaint on January 21, 1994 for lack of subject matter jurisdiction based on the anti-injunction provisions of FIRREA, see 12 U.S.C. § 1821(d)(2)(A), (B), (E); 12 U.S.C. § 1821(j), reasoning that injunctive relief is not available against the RTC and that the plaintiff's only remedy was for money damages.

On November 11, 1994, the plaintiff filed its first amended complaint in a second lawsuit seeking money damages alleging that it would not have entered into the loan agreement had State FA not agreed to convert the construction loans to permanent financing. According to the plaintiff, conversion of the loans is necessary because upon completion of construction, the building would not yet have a buyer and the apartments would not be rented. A method of financing repayment over an extended period was required in order to prevent default by the developer. Toward this end, according to the plaintiff, it was State FA's custom and practice to convert construction loans into long-term mortgage financing. Point Developers further

claims that this policy makes the properties more marketable because they each have a mortgage loan for a purchaser to assume.

On February 12, 1996, the defendant filed its first motion for summary judgment arguing that the terms of Commitment Letter upon which the plaintiff relies in claiming that it was entitled to long term financing were so vague as to render them unenforceable, and that even if the terms are sufficiently definite, they are barred from application under the parol evidence rule because of the subsequently executed fully integrated loan agreement. The Court denied the defendant's motion by memorandum of decision and order dated April 13, 1996. *See Point Developers, Inc. v. FDIC*, 921 F.Supp. 1014 (E.D.N.Y.1996). The focus of this opinion was on the common law contract principles and not the *D'Oench, Duhme & Co., Inc. v. Federal Deposit Insurance Corporation*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) doctrine or 12 U.S.C. § 1823(e), which are addressed for the first time in this decision.

On June 8, 1994, prior to this Court's decision on the defendant's first summary judgment motion and unknown to the Court, the RTC assigned its entire right, title, and interest in the notes and mortgages relating to the 54–16 and 54–20 73rd Street properties to Federal Financial Company ("Federal Financial"). On October 6, 1994, unknown to this Court, Federal Financial instituted a foreclosure action in New York Supreme Court, Queens County with regard to these properties. *See Federal Financial Co. v. Point Developers*, Index No. 021041/94 (Sup. Ct. Queens Cty.1994). In addition to the plaintiff as a party defendant in that action, Point Developers' principals, Frank Lalezarian ("Lalezarian") and Morris Mehraban ("Mehraban") were joined as defendants. The defendants filed their verified answer dated December 15, 1994 containing several affirmative defenses and a counterclaim, including allegations that "[u]pon completion of the construction for each parcel, ... the mortgage[s were] to be converted to ... permanent loan[s], self-ammortizing [sic], 30 years, with interest at the prevailing rate plus 1%." Affidavit of Thomas Bloomer ("Bloomer Aff."), Exh. C., Ver. Ans.

¶ 4xvii(b)(iii). The verified answer further states that "upon completion of the construction ... both State FA and the RTC failed and refused to honor the original commitment agreement." *Id.* at 4(e). Nothing was mentioned about this state law case in the earlier motion.

In the state court action, the plaintiff, Federal Financial, moved for summary judgment. In opposition to Federal Financial's motion, Mehraban filed an affidavit stating that:

> the defendants have a meritorious defense to this mortgage foreclosure action. The plaintiff's predecessor-in-interest breached a loan commitment underlying the two mortgages and promissory notes involved in this action ... when it failed to advance funds as part of a structured construction loan package and then failed to convert the short-term loans into permanent loans secured by long-term (30 year) self-amortizing mortgages, in violation of the lender's loan commitment.

Bloomer Aff., Exh. D., Affidavit of Morris Mehraban ("Mehraban Aff."), Oct. 10, 1995 ¶ 1; *see id.* at ¶ 9, 13.

By memorandum decision dated January 5, 1996, the State Court, by Justice Simeon Golar, recognized that:

> It is the defendants' contention that Federal's predecessor, the RTC, breached the terms of the May 1989 loan commitment issued by State Savings, when it failed to advance additional funds and convert the short term loans into permanent financing, thereby rendering [Point] Developers unable to repay the sums borrowed. The subject commitment letter provided at the bottom of the second page, "PERMANENT LOAN: $300,000 @ prevailing rate plus 1 additional point."

*Federal Financial Co. v. Point Developers, Inc.*, Index No. 021041/94 at 2 (Sup.Ct. Queens Cty. Jan. 5, 1996). In granting summary judgment to Federal Financial against Point Developers and its principals, the state court held that the Commitment Letter was "insufficient to comply with the first prong" of 12 U.S.C. § 1821(e)(1) which "mandates that the agreement be in writing." *Id.* at 3. "In the absence of material terms concerning

how or when the money would be advanced and the repayment schedule, the commitment letter constituted merely an agreement to agree and not an enforceable obligation." *Id.*

In addition, the State Court decision addressed the *D'Oench, Duhme* and 12 U.S.C. § 1823 doctrines:

As stated in *D'Oench, Duhme & Co. v. Fed. Deposit Ins. Corp.* (315 U.S. 447 [62 S.Ct. 676, 86 L.Ed. 956]), and later codified in 12 USC § 1823(e) and applied to the RTC under 12 USC § 1441a(b)(4)(A), a borrower is estopped from asserting as a defense the existence of an agreement with a failed financial institution which diminishes or defeats the interest of the RTC in any asset acquired as a receiver, in the absence of compliance with the requirements of the statute. The protections afforded the RTC have thus been extended to · its assignees and transferees. (*See, Porras v. Petroplex Sav. Assn.* 903 F.2d 379.)

It is apparent that the commitment letter relied upon by defendants is insufficient to comply with the first prong of the statute which mandates that the agreement be in writing. (12 USC § 1823[e]1.) The only evidence submitted as to how the short term loan would be converted to a permanent loan is the self-serving statement of the defendants that asserts that an additional $50,000 was to be given upon completion of construction, for a total of $300,000 to be paid out over 30 years, at the prevailing rate plus 1%. Contrary to defendants' assertion, the testimony of Leroy Busse, the bank officer who executed the commitment letter, the inclusion of the words permanent loan did not indicate a completed transaction but evidenced rather the bank's, future intent to entertain a permanent loan application upon satisfactory completion of certain conditions. In the absence of material terms concerning how or when the money would be advanced and the repayment schedule, the commitment letter constituted merely an agreement to agree and was not enforceable. (*Carmon v. Soleh Boneh, Ltd.*, 206 A.D.2d 450, 614 N.Y.S.2d 555) Unlike the holding in *Resolution Trust Corp. v. Midwest Fed.*

*Sav. Bank of Minot,* 36 F.3d 785), relied upon by the defendants, the commitment letter did not omit a material term due to a mutual mistake. Here, the terms had yet to be fully agreed upon. Defendants are, thus, estopped from asserting this agreement under 12 USC § 1823(e).

*Federal Financial Co.,* at 2–4. The order dismissing the affirmative defenses and counterclaim, striking the answer and granting summary judgment to Federal Financial was entered on May 2, 1996.

The FDIC alleges upon information and belief that no appeal has been taken from this order. Further, the defendant maintains that it had not been notified of the State Court decision prior to filing its first motion for summary judgment. On the other hand, Point Developers maintains that the defendant had access to the decision as early as January 11, 1996 based on the date printed by the fax machine and stamped on the top of each page of the copy of the decision provided to the Court.

As set forth above, the FDIC moves for summary judgment on two grounds. First, the defendant argues that the plaintiff's claims should be dismissed pursuant to 12 U.S.C. §§ 1821(d)(9)(A) and 1823(e). Second, the FDIC contends that Point Developers' claims are barred under the principles of collateral estoppel and res judicata.

## II. *Discussion*

### A. The *summary judgment standard*

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1352 (2d Cir.1994), quoting, *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990), and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Institute for Shipboard Educ. v. Cigna Worldwide Ins. Co.,* 22

F.3d 414, 418 (2d Cir.1994); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990).

Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990); *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *Converse v. General Motors Corp.,* 893 F.2d 513, 514 (2d Cir. 1990). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Lane v. New York State Elec. & Gas Corp.,* 18 F.3d 172, 176 (2d Cir.1994); *Rattner v. Netburn,* 930 F.2d 204 (2d Cir.1991).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Western World,* 922 F.2d at 121. Although the non-moving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment, Fed. R.Civ.P. 56(c) and (e) provide that the non-moving party cannot rest on the pleadings but must set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions on file showing there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *United States v. Rem,* 38 F.3d 634 (2d Cir.1994).

■ Finally, when determining a motion for summary judgment, the Court is charged with the function of "issue finding", not "issue resolution." *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994); *Eye Assocs., P.C. v. IncomRx Sys. Ltd. Partnership,* 912 F.2d 23, 27 (2d Cir.1990).

B. *The FDIC's motion for summary judgment*

1. *D'Oench, Duhme and 12 U.S.C. § 1823*

■ Initially, the FDIC argues that the plaintiff's claims are barred under the D'Oench, Duhme doctrine, *see D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) as codified at 12 U.S.C. § 1823. In *D'Oench, Duhme,* the FDIC sued to enforce a promissory note that it had acquired from a failed bank. The maker of the note raised as a defense that the note was given without consideration and with the understanding that the note would never be called for payment. The Supreme Court rejected the defense, relying on "a federal policy to protect [the FDIC], and the public funds which it administers, against misrepresentations as to the securities or other assets in the portfolios of the banks which [the FDIC] insures or to which it makes loans." *Id.* at 457, 62 S.Ct. at 679. As a result, individuals who lend themselves "to a scheme or arrangement whereby the banking authority on which [the FDIC] relied in insuring the bank was or was likely to be misled" may not raise the scheme or arrangement as a defense to an FDIC collection action. *Id.* at 460, 62 S.Ct. at 680–81; *see Inn at Saratoga Assocs. v. FDIC,* 60 F.3d 78, 80–81 (2d Cir.1995) (summarizing *D'Oench, Duhme*); *FDIC v. LDM Properties, Inc.,* CV 94–5778(CPS), 1996 WL 449346 *3 (E.D.N.Y. July 29, 1996). The rule applies to agreements designed to deceive as well as those that "would tend to have that effect." *D'Oench, Duhme,* 315 U.S. at 460, 62 S.Ct. at 680–81, and intent to deceive creditors or the FDIC is not dispositive. *Id.* at 459–60, 62 S.Ct. at 680–81; *Saratoga Assocs.,* 60 F.3d at 82.

■ The doctrine effectively " 'prohibits claims based upon agreements which are not properly reflected in the official books or records of a failed bank or thrift.' " *Young v. FDIC,* 103 F.3d 1180, 1187 (4th Cir.1997), quoting, *RTC v. Allen,* 16 F.3d 568, 574 (4th Cir.1994). Further, the same rule applies to affirmative claims brought against the FDIC, *Saratoga Assocs.,* 60 F.3d at 82, citing, *Timberland Design, Inc. v. First Serv. Bank for Sav.,* 932 F.2d 46, 50 (1st Cir.1991); *Bowen v. FDIC,* 915 F.2d 1013, 1015 (5th Cir.1990), and may be applied even where it is clear that the customer is innocent of any bad

faith, recklessness, or negligence. *Motorcity of Jacksonville Ltd. v. Southeast Bank, N.A.,* 83 F.3d 1317, 1325 (11th Cir.1996).

■ The policy underlying this scheme is to protect the interests of depositors and creditors of a failed institution, namely those that cannot protect themselves from secret agreements, as opposed to borrowers who can. *FDIC v. Suna Assocs.,* 80 F.3d 681, 684 (2d Cir.1996); *Saratoga Assocs.,* 60 F.3d at 82; *Motorcity,* 83 F.3d at 1325; *In re Century Centre Partners Ltd.,* 969 F.2d 835, 839 (9th Cir.1992), *cert. denied,* 509 U.S. 905, 113 S.Ct. 2997, 125 L.Ed.2d 690 (1993); *Bell & Murphy Assocs., Inc. v. Interfirst Bank Gateway, N.A.,* 894 F.2d 750, 754 (5th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990).

■ Since its inception, the *D'Oench, Duhme* doctrine has been expanded to cover a variety of contexts. *See, e.g., Young,* 103 F.3d at 1187 ("[c]ourts ... have expanded the doctrine, and it now applies in virtually all cases where the FDIC is confronted with an agreement not documented in the institution's records"); *OPS Shopping Ctr., Inc. v. FDIC,* 992 F.2d 306, 308 (11th Cir.1993). Presently, the doctrine has been applied to the Federal Savings and Loan Insurance Corporation ("FSLIC"), the RTC, a bridged bank and even private parties purchasing the assets of a failed institution from federal authorities. *Porras v. Petroplex Sav. Ass'n,* 903 F.2d 379, 381 (5th Cir.1990). Moreover,' the doctrine applies even where the entity asserting it had knowledge of the alleged side or secret agreement and where the defenses is based on the misrepresentations of the bank. *Langley v. FDIC,* 484 U.S. 86, 93–95, 108 S.Ct. 396, 402–03, 98 L.Ed.2d 340 (1987).

This doctrine was ultimately codified in large part at 12 U.S.C. § 1823(e)(1). The statute was subsequently amended in 1989 to broaden its scope to protect assets acquired by the FDIC when it acts as receiver for a failed bank. FIRREA, Pub.L. No. 101–73, 103 Stat. at 256. Section 1823(e)(1) provides:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it ... either as security, for a loan or by purchase or as a receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement
>
> (A) is in writing,
>
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1).

■ "In essence, the statute prevents parol evidence from altering the rights and obligations of the parties to any notes or other documents of insured institutions that pertain to the assets acquired by the FDIC." *Suna Assocs.,* 80 F.3d at 685; *see FDIC v. Wrapwell Corp.,* 922 F.Supp. 913, 925 (S.D.N.Y.1996). "Failure to satisfy one of the requirements of section 1823(e) is fatal to any agreement covered by that section." *FDIC v. Wright,* 942 F.2d 1089, 1101 (7th Cir.1991), *cert. denied,* 504 U.S. 909, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992).

■ There are two policies underlying section 1823(e). First, Congress intended to ensure that federal and state bank examiners could rely on the bank's records in evaluating the bank's assets. *See Langley,* 484 U.S. at 92, 108 S.Ct. at 401–02. Second, the legislature sought to "ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears to be headed for failure." *Id.* As stated above, the four requirements apply even if the FDIC knew of the agreement, *id.* at 95, 108 S.Ct. at 403; *Fortunoff v. Triad Land Assocs.,* 906 F.Supp. 107, 116 (E.D.N.Y.1995), and its requirements apply to affirmative claims against the FDIC acting as a receiver. *See*

12 U.S.C. § 1821(d)(9)(A); *Krauss v. FDIC,* 769 F.Supp. 519, 524 (S.D.N.Y.1991).

█ The FDIC invokes only sections 1821(d)(9)(A) and 1823(e) in support of its motion, not the common law *D'Oench, Duhme* doctrine. *See* Def. Reply Mem. of Law at 2 n. 2. Applying the four prong test set forth in section 1823(e)(1), the Court finds that the plaintiffs' claims are barred. As previously stated, in order to establish a claim against the FDIC, the plaintiff must demonstrate that the agreement at issue (A) is in writing, (B) was executed by the depository institution and any person claiming an adverse interest thereunder contemporaneously with the acquisition of the asset (C) was approved by the institution's board of directors or loan committee in the minutes, and (D) has continuously been an official record of the depository institution.

█ The plaintiff is unable to satisfy the third requirement, namely that the board of directors or loan committee of State FA approved the alleged long term loans. Accordingly, in the Court's view, Point Developers' claims necessarily fail, and the FDIC's motion for summary judgment pursuant to Fed. R.Civ.P. 56 is granted. *See, e.g., RTC v. Ruggiero,* 977 F.2d 309, 316 (7th Cir.1992) (holding that where the agreement at issue was included in the board's "draft" minutes, but not the final minutes, the agreement was unenforceable under § 1823(e)); *FDIC v. Krause,* 904 F.2d 463, 466 (8th Cir.1990) ("the agreement failed to meet at least one of the requirements [of § 1823(e) ]—that approval by the board of directors or loan committee be reflected in the minutes of the board or committee," and was therefore unenforceable against the FDIC); *FDIC v. P.L.M. Int'l, Inc.,* 834 F.2d 248, 253 (1st Cir.1987) (agreement allegedly releasing borrowers from liability on their guarantees not reflected in the board minutes and not included in official files of depository institution held invalid against the FDIC); *RTC v. Wilson,* 851 F.Supp. 141, 145 (D.N.J.1994) (holding that a loan agreement not reflected in the board or loan committee minutes was unenforceable despite writing evidencing such an agreement signed by the failed institution's Executive Vice President); *RTC v. Town-send Assocs. Ltd. Partnership,* 840 F.Supp. 1127, 1136–37 (E.D.Mich.1993) (failure of board or loan committee minutes to reflect to consider subordination agreement bars enforcement of that agreement); *FDIC v. Eagle Properties Ltd.,* 664 F.Supp. 1027, 1051 (W.D.Tex.1985) (failure of board of directors minutes to reflect approval of certificate of subordination of vendor's lien renders the agreement invalid); *FDIC v. Gardner,* 606 F.Supp. 1484, 1487–88 (S.D.Miss.1985) (written agreement executed by bank President and Chairman of the Board was insufficient because the minutes of the board of directors meeting did not reflect approval of the agreement).

█ In reaching this conclusion, the Court notes the plaintiff's argument that section 1823(e)(1) is inapplicable because the loans at issue do not constitute assets within the meaning of the statute. According to Point Developers,

> [b]ecause it is undisputed that the plaintiffs' [sic] loans were *all* sold by the RTC and/or FDIC, there is no "asset" acquired by the FDIC which is the subject of this action. The plaintiff in this action is not attempting to "diminish or defeat the interest" of the FDIC in any asset which it acquired, and a judgment in plaintiff's favor in this action will not result in the defeating or diminishing of any such asset.

Pl. Mem. Of Law at 3–4.

█ In the Court's view, such reasoning is unsound. At the outset, the Court agrees with the plaintiff that the asset requirement set forth in section 1823(e)(1) is incorporated in section 1821(d)(9)(A). *See Murphy v. FDIC,* 61 F.3d 34, 37–38 (D.C.Cir. 1995); *Thigpen v. Sparks,* 983 F.2d 644, 648–49 (5th Cir.1993). Nevertheless, the Court finds that the defendant has satisfied this criterion. Courts have interpreted section 1823(e)(1) to operate as a bar to the subsequent purchaser of such assets. *Porras,* 903 F.2d at 380–81; *CMF Virginia Land, L.P. v. Brinson,* 806 F.Supp. 90, 94 (E.D.Va.1992). This rule is necessary to encourage the purchase of holdings of failed institutions without fear of subsequent lawsuits based on

unknown agreements. *See Porras,* 903 F.2d at 381.

Applying the same policy, the Court rejects Point Developers' argument. According to the plaintiff, section 1823(e) operates as a bar only to assets currently held by the FDIC. Such a rule however, would run counter to the purpose of *D'Oench, Duhme* and section 1823(e) by inducing the defendant to hold onto assets longer than otherwise necessary in order to avoid lawsuits. The net result would effectively render section 1823(e) a nullity, providing the FDIC with protection only until it liquidates the assets of the failed institution, one of its primary functions. In the Court's view, Congress could not have intended such a result.

■ The cases cited by Point Developers do not require a different conclusion. For example, *Saratoga Associates* addresses a "promise to make a loan" not the transfer of a construction loan to a third party. *Saratoga Assocs.,* 60 F.3d at 81–82. *Murphy v. FDIC,* 38 F.3d 1490 (9th Cir.1994) considers a letter of credit. *See id.* at 1500–01. The Court finds that the fact that the FDIC, acting as a receiver, has already disposed of the assets at issue does not vitiate the protections of section 1823(e)(1). *See generally Brookside Assocs. v. Rifkin,* 49 F.3d 490 (9th Cir.1995) (declining to resolve the issue regarding the asset requirement of section 1823(e) and holding that the common law *D'Oench, Duhme* doctrine barred the plaintiffs' claims, but not altering the analysis as the result of the assets being transferred to third parties).

Finally, Point Developers argues that its claims should be protected by the "innocent borrower" defense articulated in *FDIC v. Meo,* 505 F.2d 790 (9th Cir.1974). In this regard, the Second Circuit summarized this defense as follows:

In *Meo,* the Ninth Circuit refused to grant the FDIC protection under the *D'Oench, Duhme* doctrine from defenses raised by an innocent borrower. The *Meo* Court found that "appellant was a completely innocent party with respect to the bank's improper execution of [a] stock sale agreement" and held that "a bank borrower who was neither a party to any deceptive

scheme involving, nor negligent with respect to, circumstances giving rise to the claimed defense to his note is not estopped from asserting such a defense against the bank's receiver." *Id.* at 792, 793 (footnotes omitted).

*Suna Assocs.,* 80 F.3d at 685. However, the Second Circuit has repeatedly questioned the viability of this exception. *Id.; Saratoga Assocs.,* 60 F.3d at 83 ("To what extent the innocent investor exception. survives *Langley* is a matter of some dispute") (collecting cases). In *Saratoga Associates,* the court went so far as to state that "[a] borrower who fails to ensure that the terms of the loan are explicitly incorporated into the obligation where the opportunity to do so exists is guilty of 'negligence.'" *Saratoga Assocs.,* 60 F.3d at 83.

■ The Court finds the "innocent borrower" doctrine is inapplicable. The case law demonstrates a trend moving away from application of this doctrine, *id.* (comparing cases from other circuits), and the Second Circuit has declined to apply it in recent cases. Further, in this case the plaintiff is not an unsophisticated borrower. The plaintiff is a corporation engaged in the business of real estate development and its principals have formed other corporations for the same purpose. Accordingly, the "innocent borrower" doctrine cannot serve to validate Point Developers' otherwise barred claims.

### 2. *Collateral estoppel*

The FDIC contends in the alternative that "[t]he doctrine of collateral estoppel bars Point Developers' claims that State FA was obligated to convert the Loans evidenced by all four Notes." Def. Mem. of Law at 16. The defendant essentially argues that the state court decision in which judgment was entered in favor of Federal Financial against the plaintiff operates as a bar to this lawsuit.

■ Under the Full Faith and Credit statute, 28 U.S.C. § 1738, federal courts are obligated to give a state court judgment the same preclusive effect that the judgment would receive in the state courts. *Giakoumelos v. Coughlin,* 88 F.3d 56, 59 (2d Cir.1996). Under New York law, the doc-

trine of collateral estoppel, or issue preclusion, applies when a litigant in a prior proceeding asserts an issue of fact or law in a subsequent proceeding and: (1) the issue was necessarily decided in the prior action and is decisive of the present action, and (2) there was a full and fair opportunity to litigate the decision said to be controlling. *Id.*, citing, *Schwartz v. Public Administrator,* 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725, 730 (1969); *Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir.1995). The moving party has the burden of demonstrating the identity of the issues and the opposing party has the burden of showing lack of a full and fair opportunity to litigate the issue in the prior action. *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 455, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (1985). The doctrine applies even if the forums or causes of action are different. *Schwartz,* 24 N.Y.2d at 71, 298 N.Y.S.2d at 960, 246 N.E.2d at 730.

██ The Court finds that even if 12 U.S.C. §§ 1821(d)(9)(A) and 1823(e)(1) would not otherwise compel granting the FDIC's motion for summary judgment, the plaintiff's claims would nevertheless be barred under the doctrine of collateral estoppel. On June 8, 1994, the RTC, as predecessor in interest to the FDIC, assigned its interest in two of the four Maspeth properties to Federal Financial. On October 6, 1994, Federal Financial instituted a foreclosure action in the Queens County Supreme court against Point Developers with Lalezarian and Mehraban joined as defendants. Among the affirmative defenses asserted in their answer, the defendants alleged that upon completion of the construction each of the mortgages was "to be converted to a permanent loan, self-ammortizing [sic], 30 years, with interest at the prevailing rate plus 1%." Bloomer Aff., Exh. C., Ver. Ans. ¶ 4xii(b)(iii). However, "upon completion of the construction ... both State FA and the RTC failed and refused to honor the original commitment agreement." *Id.* at 4(e).

As set forth above, in opposition to Federal Financial's motion for summary judgment, Point Developers and its principals claimed that:

Federal's predecessor, the RTC, breached the terms of the May 1989 loan commitment issued by State Savings, when it failed to advance additional funds and convert the short term loans into permanent financing, thereby rendering [Point] Developers unable to repay the sums borrowed. The subject commitment letter provided at the bottom of the second page, "PERMANENT LOAN: $300,000 @ prevailing rate plus 1 additional point."

*Federal Financial Co.,* Index No. 021041/94 at 2 (granting plaintiff summary judgment). In rejecting this argument and granting Federal Financial's motion for summary judgment, the state court held that the Commitment Letter was "insufficient to comply with the first prong" of 12 U.S.C. § 1821(e)(1) which "mandates that an agreement be in writing." *Id.* at 3. "In the absence of material terms concerning how or when the money would be advanced and the repayment schedule, the commitment letter constituted merely an agreement to agree and not an enforceable obligation." *Id.* The order dismissing the affirmative defenses and counterclaim, striking the answer and granting summary judgment to Federal Financial in the decision rendered on January 5, 1996 was entered on May 2, 1996.

In the Court's view, the state court decision is binding upon this Court. As previously stated, in order to invoke the doctrine of collateral estoppel, the issue decided in the first litigation must have been necessarily decided in the prior action and decisive of the present action, and there must have been a full and fair opportunity to contest the issue in the prior proceeding.

With respect to the first requirement, the Court finds that the issue presented by this litigation, namely whether the alleged agreement to convert the short term construction loans to long term financing is enforceable, is at the very core of both litigations. In the state court case, Point Developers asserted the enforceability of this alleged agreement as a defense to Federal Financial's efforts to foreclose after its default on the construction loans. In this action, the same theory serves as the foundation of the plaintiff's affirmative claims for breach of the parties' agreement.

Further, the Court finds that Point Developers had a full and fair opportunity to litigate the merits of this issue in the state court. As set forth above, the plaintiff, as a defendant in state court, asserted the validity of the alleged agreement, both as an affirmative defense, and in opposition the Federal Financial's summary judgment motion. Papers were submitted in opposition by Point Developers. The court addressed the merits of this contention expressly, ruling as this Court does, that this agreement is barred by 12 U.S.C. § 1823(e). Accordingly, the Court finds that the requirements necessary to invoke the doctrine of collateral estoppel have been satisfied. As a result, even if the FDIC was not entitled to summary judgment based on section 1823(e), its motion would nevertheless be granted on the basis of issue preclusion.

 In reaching this conclusion, the Court acknowledges the plaintiff's innovative argument that the doctrine of collateral estoppel should not apply because of this Court's earlier decision issued on April 13, 1996. *See Point Developers,* 921 F.Supp. 1014. According to Point Developers, the state court, in its January 5, 1996 decision, granted Federal Financial's motion based on its determination that the alleged agreement to convert the short term loans to long term financing constituted merely an agreement to agree and as a result, was unenforceable. In this Court's April 13, 1996 decision however, it was determined that the writing at issue was sufficient and that extrinsic evidence could be applied to supply any missing terms, based on common law contract theories. *Point Developers,* 921 F.Supp. at 1022–23. Based on this Court's earlier determination, the plaintiff now argues that "it is, if anyone, the defendant FDIC which is precluded from relitigating the question of whether the contract in question is an agreement to agree. The FDIC already litigated this question in this case." Pl. Mem. of Law at 18 (emphasis omitted). Further, the plaintiff argues that FDIC should be deemed to have waived assertion of the collateral estoppel defense because of its failure to present the issue to this Court in the prior summary judgment motion despite the fact that the underlying state court decision was rendered several months earlier.

In the Court's view, Point Developers' response to the FDIC's collateral estoppel argument represents a creative attempt at a legal slight of hand. On January 5, 1996, the state court rendered a decision that the alleged conversion agreement was an insufficient writing, and as a result, was unenforceable under 12 U.S.C. § 1823(e). The related order was entered on May 2, 1996. Both the decision and subsequent order are binding on this Court because the section 1823(e) issue was necessarily decided and Point Developers had a full and fair opportunity to litigate the issue. The fact that this Court has issued a decision on an earlier dispositive motion based on common law contract principles, and not section 1823(e), does not alter this conclusion.

### 3. *Res judicata*

The FDIC also moves for summary judgment with respect to the two mortgages actually foreclosed upon in the prior state action on the basis of res judicata. However, because the Court has already granted the defendant's motion on two alternative grounds, the merits of this argument need not be reached.

### III. *Conclusion*

Having reviewed the parties' submissions, and heard oral argument, and for the reasons set forth above it is hereby

ORDERED, that the defendant FDIC's motion for summary judgment pursuant to Fed.R.Civ.P. 56, 12 U.S.C. §§ 1821(d)(9)(A) and 1823(e)(1) and the doctrine of collateral estoppel is granted, and the complaint is dismissed; and it is further

ORDERED, that the Clerk of the Court is directed to close this case.

SO ORDERED.